REVISED - May 8, 2000

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-51225

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JENELL GOODLEY TAYLOR,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

April 14, 2000

Before POLITZ, GIBSON,* and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Jenell Goodley Taylor appeals her conviction and sentence, contending that

the trial court committed various evidentiary errors that, considered either

separately or cumulatively, resulted in unfair prejudice and require a reversal.

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court
of Appeals, sitting by designation.

Taylor also raises two issues relevant to the calculation of her sentence. Finding reversible error we reverse Taylor's conviction and sentence and remand for a new trial.

## BACKGROUND

Taylor was charged, along with 16 other defendants in a 54 count indictment, with one count of conspiracy to possess and distribute cocaine and cocaine base in violation of 21 U.S.C. § 846; one count of aiding and abetting another to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1).[1] Taylor pleaded not guilty on all counts and her case was severed. The drug charges were tried to a jury and the government gave notice that it would seek a sentence enhancement based on the alleged involvement of over 50 grams of cocaine base.

Taylor's first trial ended in a mistrial.[2] On retrial the jury returned guilty verdicts on both counts. The Presentence Investigation Report characterized

---

[1] The money laundering charges were dismissed prior to trial. Additionally, the evidence at trial was limited to cocaine base (crack). No evidence was offered respecting possession or distribution of cocaine powder.

[2] The evidentiary rulings at issue in this appeal were essentially made by the court in the first trial and were deemed the law of the case for purposes of the second trial. **United States v. O'Keefe,** 169 F.3d 281 (5th Cir. 1999) (describing doctrine).

Taylor's role as one of a manager/supervisor. Taylor's objections to the information contained in the PSI were rejected and the court imposed concurrent sentences of imprisonment for 262 months and supervised release for eight years on each count. Taylor timely appealed.

Taylor raises several issues on appeal. She first contends that the court committed reversible error by admitting into evidence an organizational chart prepared by the government, claiming that the chart was not an accurate depiction of the testimony adduced at trial and that the jury was given an improper instruction regarding its use. She further contends the court improperly admitted two 1994 state court convictions of an alleged co-conspirator, Derrick Goodley, ostensibly as overt acts in furtherance of the conspiracy. In addition, she asserts that the court erroneously admitted evidence of her prior drug conviction and claims the prosecutor made improper statements during closing argument. Taylor maintains that each of these errors independently warrant reversal, and she urges that their cumulative effect mandates same. She also contends that the district court erred in imposing a three-level upward adjustment for her role as a manager/supervisor in the criminal organization. Her final point of error is that under the Supreme Court's teachings in **Jones v. United States,**[3] because the

---

[3] 119 S. Ct. 1215 (1999).

quantity of drugs involved increased the maximum penalty, that quantity should have been set forth in the indictment and proven to the jury beyond a reasonable doubt. We consider each of these issues in turn.

**ANALYSIS**

1. *Admission of organizational chart.*

We review the admission of evidence for abuse of discretion, considering any errors under the harmless error doctrine.[4] Evidentiary rulings will be affirmed "unless they affect a substantial right of the complaining party."[5]

Throughout the trial the government made reference to a large organizational chart that purported to list the players in the drug conspiracy, and their relevant positions within the hierarchy. The chart was approximately 3' x 3' 6" in size and included photographs of each of the alleged conspirators. Colored lines connecting the photographs represented the flow of drugs. Taylor's picture was placed directly below the alleged leader of the conspiracy and the lines purported to show that she supplied crack cocaine to eight other co-conspirators, four of whom supposedly distributed the drugs to others within the lower ranks.

The chart was first used by the government in its opening statement to the

---

[4]**United States v. Haese,** 162 F.3d 359 (5th Cir. 1998).

[5]**Id.** at 364 (citing **United States v. Skipper,** 74 F.3d 608 (5th Cir. 1996)).

jury as reflective of that which the prosecutor intended to prove. It also was used as an aid to assist the jury in distinguishing between the alleged conspirators, most of whom were related and had the same last name. The chart was placed before the jury during opening statements and when witnesses were questioned about it. At other times the chart was turned away from the jury. At the close of the government's case the chart was admitted into evidence as a summary of testimony. As such, the chart was before the jury during closing arguments and was in the jury room during deliberations. Defense counsel objected to the chart both before opening statements and when the prosecutor sought its admission into evidence.

The court gave two instructions regarding the chart's use. After the government's opening statement the court instructed the jury that the chart reflected what the government believed the facts to be, but that it would be up to them to evaluate whether it was an accurate depiction of the events. The second instruction, given after the chart was admitted into evidence, advised that the chart should be evaluated just like any other evidence and should be given whatever weight the jury deemed appropriate.

The admission of organizational charts and summary evidence is governed by Federal Rules of Evidence 611(a) and 1006. We previously have stated that

allowing the use of charts as " 'pedagogical' devices intended to present the government's version of the case" is within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a).[6]  Such demonstrative aids typically are permissible to assist the jury in evaluating the evidence, provided the jury is forewarned that the charts are not independent evidence.[7]  Additionally, such charts are not admitted into evidence and should not go to the jury room absent consent of the parties.[8]  In contrast, Rule 1006 applies to summary charts based on evidence previously admitted but which is so voluminous that in-court review by the jury would be inconvenient.[9]  Although the plain language of Rule 1006 does not apply to summaries of testimonial evidence, we have permitted such use in conspiracy cases to aid the jury "[in] put[ting] the myriad of complex and intricate pieces of testimonial and documentary evidence comprising the puzzle

---

[6]**United States v. Posada-Rios,** 158 F.3d 832, 869 (5th Cir. 1998); **Pierce v. Ramsey Winch Co.,** 753 F.2d 416 (5th Cir. 1985).  Rule 611(a) pro vides, "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time...." FED. R. EVID. 611(a).

[7]**Posada-Rios,** 158 F.3d at 869; **Pierce,** 753 F.2d at 431.

[8]**Pierce,** 753 F.2d at 431.

[9]**United States v. Tannehill,** 49 F.3d 1049 (5th Cir. 1995); **United States v. Duncan,** 919 F.2d 981 (5th Cir. 1990) (citing **United States v. Stephens,** 779 F.2d 232 (5th Cir. 1985)).  Rule 1006 provides in relevant part, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." FED. R. EVID. 1006.

together...."[10]    The government contends that the district court did not err in admitting the organizational chart because there was testimony both supporting and not supporting the way the pictures were placed and the lines drawn. It also asserts that the testimony revealed numerous alleged participants with various familial relationships and a variety of relevant dates. As such, the chart enabled the jury to understand the conspiracy's structure and the nature and extent of Taylor's involvement. We are not persuaded.

A necessary precondition to the admission of summary charts is that they accurately reflect the underlying records or testimony, particularly when they are based, in part, on the government's factual assumptions.[11] In this case, the organizational chart did not accurately reflect the underlying testimony. For example, the government never alleged and there was no evidence to support the assertion that Taylor supplied cocaine base to Hilliard Goodley. The lines of the chart would show that she did. The chart also reflects that Taylor supplied crack

---

[10]**United States v. Winn,** 948 F.2d 145, 157 (5th Cir. 1991); **Duncan,** 919 F.2d at 988 ("We cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt.").

[11]**Stephens,** 779 F.2d at 238-39 (5th Cir. 1985) (no abuse of discretion in admitting summary charts where all the records on which the charts were based were in evidence); **United States v. Jennings,** 724 F.2d 436, 442 (5th Cir. 1984) (summary charts premised on the government's assumptions permissible as long as supporting evidence has been presented to the jury and the jury is instructed that they determine what weight the evidence should be given) (quoting **United States v. Means,** 695 F.2d 811 (5th Cir. 1983)).

cocaine directly to Patricia Miller and Clarence Blaylock, both of whom testified that they never received such.[12]  Additionally, the chart would show that Freddie Goodman, the government's star witness, received crack cocaine only from Taylor and that he never supplied drugs to anyone else in the alleged conspiracy.  His testimony, however, established that he received drugs from Carla Goodley Brady and Derrick Goodley, the purported head of the conspiracy, as well as from Taylor. Further, he testified that he provided cocaine base to at least four other individuals pictured on the chart, yet there are no lines drawn to reflect same.  Thus, admission of the chart allowed the government to assume that which it was required to prove beyond a reasonable doubt as operative facts of the alleged offense.[13]  The admission of the chart into evidence was error.

We further conclude that this error was not harmless.  As noted, the chart was viewed by the jury throughout virtually the entire trial and it was available to them during deliberations.  Taylor's picture was placed directly below the alleged leader of the conspiracy. By omitting connections between the other alleged participants, and including connections to Taylor that did not exist, the chart gave Taylor a more

---

[12]Clarence Blaylock testified that he received drugs directly from Freddie Goodman and assumed that they came from Taylor.

[13]**Baines v. United States,** 426 F.2d 833, 840 (5th Cir. 1970).

8

central role in the conspiracy than the testimony supported and stretched the bounds of permissible government assumptions well beyond the breaking point.[14] Under these circumstances, we must conclude that Taylor's substantial rights were affected by the presence of and repeated references to the government's organizational chart.[15] Although we have held that proper jury instructions regarding the function of summary charts may neutralize their potential prejudicial effect,[16] the instructions herein do not pass muster. We therefore hold that admission of the chart unduly prejudiced Taylor's trial and requires a reversal. We deem it appropriate to address other issues raised in this appeal.

*2. Admission of co-conspirator's prior convictions.*

In her second point of error, Taylor contends that the district court erred in admitting into evidence two 1994 state court convictions of Derrick Goodley, the purported head of the conspiracy. Taylor complains that Goodley's convictions are

---

[14]We also note that the pictures of the defendants are like mug shots, contributing to the chart's prejudicial impact.

[15]**United States v. Castillo,** 77 F.3d 1480, 1500 (admission of summary witness' testimony harmless error because witness "did not misstate or put an unfair 'spin' on the testimony repeated or paraphrased and it was uncontradicted"); **Jennings,** 724 F.2d at 442 (that defendant was convicted of only four out of twelve counts necessarily implies that the jury did not take at face value the government's summary chart, thereby indicating no unfair prejudice occurred); **United States v. Apodaca,** 666 F.2d 89 (5th Cir. 1982) (defendant not prejudiced by summary charts where he was not convicted of all counts in the indictment).

[16]**Winn,** 948 F.2d at 158 (quoting **Duncan,** 919 F.2d at 988); **United States v. Tannehill,** 49 F.3d 1049, 1056 (5th Cir. 1995); **Means,** 695 F.2d at 817.

irrelevant in determining her guilt and were highly prejudicial because they wrongly insinuated guilt by association. We must agree. It is well-settled that a codefendant's prior convictions are not relevant in the determination of a defendant's guilt, and are inadmissible as substantive proof of a defendant's involvement in the crime charged.[17] A codefendant's prior convictions may only be admitted when two or more codefendants are tried together, or when the codefendant is a witness against the defendant. In neither case, however, is such evidence admissible against the defendant.[18] In the case at bar, Goodley was not tried with Taylor and was not called as a witness against her. Thus, "there was no legitimate reason for offering this evidence,"[19] and it should have been excluded. The government claims, however, that Goodley's 1994 convictions were intrinsic evidence because the underlying conduct occurred during the life of the charged conspiracy. We are not persuaded.

---

[17]**United States v. Leach,** 918 F.2d 464 (5th Cir. 1990); **Bridge v. Lynaugh,** 838 F.2d 770 (5th Cir. 1988); **United States v. Miranda,** 593 F.2d 590 (5th Cir. 1979).

[18]**Leach,** 918 F.2d at 466-67 (district court committed reversible error by admitting conspiracy conviction of a codefendant where codefendant did not testify and his conviction was not part of defendant's trial strategy) (citations omitted); **United States v. Cihak,** 137 F.3d 252, 258 (evidence of conviction for acts similar to crime charged admitted where codefendants were tried together, but jury instructed that conviction of one defendant could not be used as proof of other defendant's guilt); **United States v. Marroquin,** 885 F.2d 1240, 1246 (5th Cir. 1989) (convictions of codefendant may be used by defendant to impeach codefendant where he is a witness and may be introduced by prosecutor to " 'blunt the sword' of anticipated impeachment").

[19]**Leach,** 918 F.2d at 468.

10

Evidence of prior acts is intrinsic to the charged conspiracy if the prior acts are "inextricably intertwined" with the acts underlying the charged offense, if both acts are part of a "single criminal episode," or the prior acts were "necessary preliminaries" to the crime charged.[20] Such evidence is admissible "to complete the story of the crime by proving the immediate context of events in time and place."[21] The convictions admitted herein resulted from Goodley's delivery of cocaine on two occasions in 1993. The only evidence adduced at trial, with respect to these convictions, however, were the judgments of conviction. These judgments may not be construed as inextricably intertwined with, related to as part of a single criminal episode, or necessary preliminaries to the conspiracy of which Taylor was charged. Criminal judgments are not acts in furtherance of a conspiracy. The government's reliance on cases in which we have allowed the admission of prior conduct of a codefendant as intrinsic to the charged offense is misplaced. The relevant cases involve evidence of either uncharged conduct or acts which resulted in a conviction.[22] None involved admission of the judgment of conviction alone.

---

[20]**United States v. Powers,** 168 F.3d 741, 749 (5th Cir. 1999) (quoting **United States v. Williams,** 900 F.2d 823, 825 (5th Cir. 1990)); **United States v. Coleman,** 78 F.3d 154, 156 (5th Cir. 1996).

[21]**Coleman,** 78 F.3d at 156 (citations omitted).

[22]*See, e.g.,* **United States v. Krout,** 66 F.3d 1420 (5th Cir. 1995); **United States v. Maceo,** 947 F.2d 1191 (5th Cir. 1995).

Even if Goodley's state court convictions constituted proper intrinsic evidence, which they do not, they nonetheless should have been excluded as unduly prejudicial under Federal Rule of Evidence 403.[23] When considered in conjunction with the government's organizational chart depicting Taylor as Goodley's chief lieutenant, the propensity for error in admitting these convictions is twofold. First, the jury may infer that Taylor must be guilty of the charged offenses because she associated with convicted felons. We repeatedly have held that such "guilt by association evidence" should be excluded.[24] Second, it allows the jury to assume that if Goodley delivered drugs, he must have delivered them to Taylor. There is no evidence that such was the case herein. Because of the nonexistent probative value and highly prejudicial nature, the district court clearly abused its discretion in admitting Goodley's prior convictions.

*3. Admission of Taylor's prior drug conviction.*

Taylor next complains that the district court abused its discretion in admitting

---

[23]Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

[24]**United States v. Polasek,** 162 F.3d 878, 885 (5th Cir. 1998); **United States v. Parada-Talamantes,** 32 F.3d 168, 170 (5th Cir. 1994) ("Because evidence of 'guilt by association' is typically highly prejudicial, it should be excluded.") (citation omitted).

as extrinsic evidence her prior conviction for possession of cocaine base with intent to deliver. Conceding that this evidence is relevant to prove her intent to participate in the charged conspiracy and her intent to distribute cocaine base under Rule 404(b), she asserts that its probative value was far outweighed by its prejudicial effect. We consistently have held that evidence of a defendant's prior conviction for a similar crime is more probative than prejudicial and that any prejudicial effect may be minimized by a proper jury instruction.[25] In this case, the district court twice admonished the jury that Taylor's prior conviction was to be considered only for the limited purpose of determining her intent or state of mind and not as evidence that she committed the offenses charged.[26] We find no abuse of discretion in the admission of this evidence.

4. *Prosecutor's comments.*

Taylor also claims that the prosecutor made improper comments during closing argument which compromised her right to a fair trial. The government contends that the prosecutor's argument was an entirely proper response to defense counsel's attack on the credibility of the government's witnesses. As Taylor did

---

[25]**United States v. Harris,** 932 F.2d 1529 (5th Cir. 1991) (citing cases); **United States v. Bermea,** 30 F.3d 1539 (5th Cir. 1994).

[26]**Harris,** 932 F.2d at 1534.

not object to the prosecutor's statements at trial, we review for plain error.[27] An

error is plain if it affects the defendant's substantial rights.[28] In this context, plain

error results if the prosecutor's comments "seriously affected the fairness, integrity,

or public reputation of a judicial proceeding and resulted in a miscarriage of

justice."[29] To determine whether plain error has occurred, we must view the

statements in the context of the entire record.[30]

As a general rule, the prosecutor may not bolster the credibility of its

witnesses by personally attesting to their truthfulness, as "doing so may imply that

the prosecutor has additional personal knowledge about the witness and facts that

confirm such witness' testimony, or may add credence to such witness'

testimony."[31] Where defense counsel insinuates that the government's witnesses

perjured themselves because they entered into plea-bargains and were hoping to

receive lighter sentences, a prosecutor may rebut those accusations, even if those

---

[27]**United States v. Washington,** 44 F.3d 1271 (5th Cir. 1995); **United States v. Goff,** 847 F.2d 149 (5th Cir. 1988).

[28]FED. R. CRIM. P. 52(b).

[29]**Goff,** 847 F.2d at 162 (citing **United States v. Livingston,** 816 F.2d 184 (5th Cir. 1987)).

[30]**United States v. Young,** 470 U.S. 1 (1985).

[31]**Washington,** 44 F.3d at 1278 (footnote omitted); **Bermea,** 30 F.3d at 1563.

14

statements otherwise would amount to a bolstering argument.[32] While defense counsel at bar took this position, the government went beyond rebuttal of that argument when the prosecutor stated:

> And what it comes down to, if you want to believe [the defense's] theory, is that myself, these two detectives, the members of the DEA who assisted, members of the Midland Police Department all got together to subborn [sic] perjury, to obstruct justice to make up a fairy tale about this Defendant, and if you believe that, ladies and gentlemen, let me be the first to tell you, you must acquit the Defendant.

Such comments repeatedly have been condemned as highly improper, if not pernicious, for they raise the likelihood that a jury would believe that the only way to acquit the defendant is by "abandon[ing] [their] confidence in the integrity of the government."[33] Because the prosecution's comment referred to all of the witnesses who testified against Taylor its effect was to bolster the government's entire case. Although the argument was error, whether it constitutes plain error presents a difficult question. Because we otherwise reverse this conviction, we need not decide this question. We are confident that it will not be repeated in any new trial.

5. *Sentence enhancement.*

---

[32]**Washington,** 44 F.3d at 1278; **United States v. Dorr,** 636 F.2d 117 (5th Cir. Unit A 1981).

[33]**Goff,** 847 F.2d at 164; **Young,** 470 U.S. at 18-19 (the danger in such comments is that "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"); **Dorr,** 636 F.2d at 120-21; **United States v. Garza,** 608 F.2d 659 (5th Cir. 1979).

Because we reverse Taylor's conviction, we do not consider whether the district court properly enhanced her sentence for a role as a manager or supervisor.

6. *Jones v. United States.*

Finally, Taylor asks us to consider whether the recent Supreme Court decision in **Jones v. United States**[34] requires that drug quantity be alleged as an element of the offense charged. **Jones** held that the provisions of the federal carjacking statute, which provides for different maximum penalties depending on the presence of certain aggravating factors, must be construed as creating three distinct offenses rather than a single crime with three different penalties.[35] While the Court stated that it reached this conclusion to resolve constitutional doubt on the issue of statutory construction for which there was no dispositive precedent, it intimated that constitutional guarantees may require that "any fact which increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."[36] It is on this language that Taylor grounds her contention that drug quantity is an element of 21 U.S.C. § 841(a)(1), because the maximum penalty she could receive depends, in major part, on the

---

[34]119 S. Ct. 1215 (1999).

[35]**Id.** at 1228.

[36]**Id.** at 1224 n.6.

amount of drugs involved in the offense.

Although **Jones** was decided while this appeal was pending, we recently addressed this issue in **United States v. Rios-Quintero.**[37]   Rios-Quintero was convicted of possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and importation of heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1).  Like Taylor, Rios-Quintero had not raised this issue in the district court because **Jones** was decided after judgment and sentencing but before the appellate briefs were filed.  Consequently, our review was limited to whether the failure to allege drug quantity in the indictment and subsequently prove it to the jury amounted to plain error.

We held that "the impact of **Jones** is not sufficiently obvious or clear to permit this panel to deviate from this Circuit's existing precedent characterizing drug quantity as a sentencing factor," and thus any error was "not sufficiently plain to merit relief."[38]   We further reasoned that due attention to the complex issue raised by the **Jones** decision can only be given when it has been "presented to and preserved in the district court."[39]  Thus, consistent with **Rios-Quintero,** we conclude

---

[37]204 F.3d. 214 (5th Cir. 2000).

[38]**Id.** at 215 (citations omitted).

[39]**Id.** at 220.

17

that any error resulting from the government's failure to allege drug quantity in the indictment does not rise to the level of plain error. We recognize, however, that Taylor is not foreclosed from raising this issue on remand, nor is the government foreclosed from revisiting its indictment.

## CONCLUSION

For the reasons set forth above, we REVERSE Taylor's conviction and sentence and REMAND to the district court for further proceedings consistent herewith.