United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-21296

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

WALTER LYNELL STAPLETON, WAYLAND EARL CRISWELL

Defendants - Appellants

_____

Appeal from the United States District Court
for the Southern District of Texas

No. H-01-CR-145-3

_____

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

PER CURIAM:[*]

After a jury trial resulting in guilty verdicts for each of

the two defendant-appellants, judgments of conviction for aiding

and abetting in the commission of bank robbery were entered by the

district court.  On appeal, we affirm the judgments of conviction

and sentences for both defendants.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

**FACTUAL and PROCEDURAL BACKGROUND**

Along with four other individuals – Toniea Thompson, Charles Whiting, Zebadiah Comb, and Sidney Tatum – the two defendant-appellants, Wayland Earl Criswell and Walter Lynell Stapleton, were named in an indictment returned on February 22, 2001.  The indictment charged that on April 3, 1997, the six co-defendants took, by force, violence and intimidation, $39,925 of federally insured deposits from the First State Bank of Livingston in Shepard, Texas (the "Shepard bank") in violation of 18 U.S.C. §§ 2113(a) & (2) ("bank robbery").[1]  Thompson, Whiting and Comb pled guilty and, pursuant to their plea and cooperation agreements, testified on behalf of the government in the case against Criswell and Stapleton.  At the time of trial, all three of these co-defendants were awaiting sentence; co-defendant Tatum was a fugitive.

The undisputed facts presented at trial reveal that at approximately 2:55 p.m., on April 3, 1997, four African-American adults wearing black bandanna masks, caps of some sort, work gloves, long-sleeve windbreakers, dark pants and running shoes,

---

[1]     In addition to the bank robbery count (count 1), which all co-defendants were charged with, Toniea Thompson was charged (in count 2) with possession of a firearm in furtherance of the bank robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and Whiting, Stapleton and Comb were charged (in count 3) with possession of a firearm in furtherance of bank robbery in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The district court granted Stapleton's unopposed motion for judgment of acquittal on count 3.  Count 1 is thus the only count relevant to this appeal.

entered the Shepard bank, a member of the Federal Deposit Insurance Corporation, and fired two shots at the bank camera near the doors. While two of the robbers held the customers inside the bank at gunpoint, the remaining two leapt over the counter behind the teller area and emptied the money contained in the drawers into black duffle bags. After approximately three minutes, the four individuals exited the bank and drove off in a stolen Suburban that had been left running by the bank entrance. A clip of the bank video-tape of the robbery introduced into evidence at trial shows four disguised persons were involved in the bank robbery.

At trial, largely through the testimony of co-defendants Whiting, Thompson and Comb, and through the testimony of Bryan Thorn, a friend of several of the co-defendants who was convicted of participating in a bank robbery in Dayton, Texas (with Whiting, Thompson and, allegedly, Criswell) that occurred a month after the Shepard bank robbery, the government alleged that Criswell came up with the idea to rob the bank, surveyed the bank with Thompson, and helped recruit several members of the conspiracy. Further, the government alleged that, on the date in question, Criswell (with Tatum) drove his own car to the bank ahead of Stapleton, Whiting, Thompson and Comb and was responsible for watching the perimeter of the bank during the robbery. As alleged, Stapleton, Whiting, Thompson and Comb went into the bank, and while Thompson and Comb held the customers at gunpoint, Stapleton and Whiting jumped over the teller counter and collected the money. All six co-defendants later met at Criswell's house to split the money – Stapleton,

3

Whiting, Thompson and Comb allegedly received between $6-11,000 each, while Criswell and Tatum allegedly received between $2-4,000 each.

On August 16, 2001, after a four-day jury trial, the jury returned a verdict of guilty for both defendants. Judgments of conviction were thereafter entered by the district court. The judgments sentenced both defendants to 140-month imprisonment terms and to 3-year supervised release terms. The defendants were also ordered to pay $35,925 in restitution and $100 in special assessment. From these judgments, the defendants raise several points of alleged error.

## II.

### ANALYSIS OF ALLEGED ERROR

#### A. Prosecutorial Misconduct

Both Stapleton and Criswell allege several instances of prosecutorial misconduct. Specifically, they contend that improper arguments by the Assistant United States Attorneys ("AUSA") Michael Wynne and Jay Hileman prejudiced their substantial rights.

On review of a charge of prosecutorial misconduct, this court follows a two-step test, under which it must initially decide whether the prosecutor made an improper remark. United States v. Fields, 72 F.3d 1200, 1207 (5th Cir. 1996). If it concludes that an improper remark was made, it must then consider whether the improper remark "taken as a whole in the context of the entire case, prejudicially affected the substantial rights of the

4

defendant." United States v. Munoz, 150 F.3d 401, 414-15 (5th Cir. 1998) (internal quotation omitted). In resolving this matter, the court assesses several factors: (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt. Id. (citing United States v. Tomblin, 46 F.3d 1369, 1389 (5th Cir. 1995)).

### 1. AUSA Hileman's allegedly improper comments

Neither defendant objected to Hileman's comments at trial; the alleged error is thus reviewed for plain error. United States v. Taylor, 210 F.3d 311, 318 (5th Cir. 2000). "An error is plain if it affects the defendant's substantial rights." Id. at 311 (citing United States v. Goff, 847 F.2d 149, 162 (5th Cir. 1988). Further, "under this standard, [the court] should not exercise [its] discretion to correct a forfeited error unless the error 'seriously affects the fairness, integrity or public reputation of the proceedings.'" United States v. Smith, 203 F.3d 884, 888 (5th Cir. 2000) (quoting United States v. Gaudin, 515 U.S. 506, 527 (1995)).

To determine if plain error occurred, the court must view the statements in the context of the entire record. United States v. Young, 470 U.S. 1, 12 (1985). Taken in context, the statements by AUSA Hileman relating to the trial testimony of Thompson are not improper and do not roam beyond the record because the statements specifically relate to evidence that was adduced at trial.

Hileman's statements are thus not improper, much less "clear" or "obvious" errors. United States v. Burton, 126 F.3d 666, 674 (5th Cir. 1997).

### 2. Wynne's allegedly improper comments

The defendants also contend that improper comments made by AUSA Wynne during his closing argument were designed to cloak his witnesses in the protective mantle of the United States government.

The defendants objected to the allegedly improper comments by Wynne;[2] we thus apply harmless error review, under which, reversal is appropriate if the prosecutor's remarks exceeded permissible bounds and the error violated the defendants' substantial rights. Young, 470 U.S. at 12 n.10; United States v. Gallardo-Trapero, 185 F.3d 307, 320 (5th Cir. 1999).

Taken in context, Wynne's initial comment merely responded to the defendants' accusations that he dumped untrustworthy witnesses on AUSA Hileman in favor of working only with trustworthy witnesses and was not improper.

Assuming Wynne's further comment that he stood behind every witness that testified is improper in that he "invoked the aegis of a governmental imprimatur" to bolster the government's witnesses, id., taken in context, the remark did not prejudicially affect the substantial rights of Stapleton and Criswell. Given what the

_____

[2]  Only Stapleton objected to Wynne's comments. However, before trial, the district court ruled that where both defendants had an identity of interest, the court would deem objections made by one to apply to both defendants.

government refers to as the "strident advocacy" on both sides of this case, the single comment by Wynne was partially overshadowed by the defense allegations that Wynne was disassociating himself from the "untrustworthy" witnesses. United States v. Fields, 72 F.3d 1200, 1207 (5th Cir. 1996). Further, the cautionary instructions given here went far in mitigating any prejudicial effect because the instructions were made specifically regarding this comment and directly after the comment was made.[3] See, e.g., United States v. Duffaut, 314 F.3d 203, 210 (5th Cir. 2002). Finally, the strength of the evidence of guilt here is strong. That the evidence (aside from the testimony of participating witnesses) is largely circumstantial does not change this fact. The trial consumed four days and involved over twenty witnesses. In addition to the testimony of the co-defendants and Thorn, the government proffered corroborating testimony from bank employees, witnesses, and several law enforcement agents who were involved in the investigation of the robbery. We conclude that the defendants'

---

[3] The district court sustained Stapleton's objection as to this comment, and immediately instructed the jury in the following manner:

> Ladies and gentlemen. It is up to you to decide
> whether you credit the testimony of any one or all of
> the witnesses or any part of the testimony. What the
> government thinks is completely not your concern. His
> comment is stricken, ladies and gentlemen, and the
> Government attorney is instructed that your views about
> the testimony, in terms of your personal beliefs or
> whatever, are not to be discussed.

substantive rights were not prejudiced by Wynne's comments.  See,
e.g., Gallardo-Trapero, 185 F.3d at 323.

**B.  Sufficiency of the Evidence to Sustain the Jury Verdict**
   **against Stapleton**

Stapleton contends that the evidence is insufficient to
sustain the verdict against him because no non-participating
witness identified him at the scene and no physical evidence placed
him near the bank.  Regarding his sufficiency challenge, Stapleton
preserved this court's usual standard of review for such claims by
moving for a judgment of acquittal at the close of the evidence.
FED. R. CRIM. P. 29(a); United States v. Pankhurst, 118 F.3d 345, 351
(1997).  Therefore, this court must view the evidence and all
inferences to be drawn from it in the light most favorable to the
verdict to determine if a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.
United States v. Broussard, 80 F.3d 1025, 1030 (5th Cir. 1996).

To convict a defendant of bank robbery under 18 U.S.C.
§ 2113(a), the government must prove that (1) an individual or
individuals (2) used force and violence or intimidation (3) to take
or attempt to take (4) from the person or presence of another (5)
money, property, or anything of value, (6) belonging to or in the
care, custody, control, management, or possession (7) of a bank,
credit union, or savings and loan association.  United States v.
McCarty, 36 F.3d 1349, 1357 (5th Cir. 1994).  A person who aids or
abets the commission of a crime is punishable as a principal.  18
U.S.C. § 2.  To prove aiding and abetting, the government must show
that the defendant (1) associated with the criminal venture, (2)

8

participated in the venture, and (3) sought by action to make the venture succeed. United States v. Salazar, 66 F.3d 723, 729 (5th Cir. 1995).

From the totality of the evidence, a jury could reasonably conclude that Stapleton was the fourth individual who entered the bank with Whiting, Thompson and Comb. While no non-participating witnesses could positively identify Stapleton as being one of the four persons who entered the bank to rob it (likely because these four individuals carefully concealed their identity behind caps and bandannas), Stapleton's participation in the robbery was established by the testimony of co-defendants Whiting, Thompson and Comb and by Thorn. Each identified him as the fourth person who entered the bank and as one of the persons who jumped over the counter to retrieve the money. He was also identified by his co-defendants as one of the persons who purchased bandannas, gloves and other items necessary for the crime at the grocery store. We must "accept credibility choices that support the jury's verdict and may not reweigh the evidence." United States v. Guerrero, 169 F.3d 933, 939 (5th Cir. 1999).

C.    Pre-Indictment Delay

In the district court, Stapleton filed a motion to dismiss the indictment due to a pre-indictment delay of four years between the date of the offense, April 3, 1997, and the date the indictment was filed, February 22, 2001.

On review, we uphold the district court's factual findings that no actual prejudice resulted from the delay and that no bad faith purpose on the part of the government was manifest in the

9

delay as not clearly erroneous. See, e.g., United States v. Jimenez, 256 F.3d 330, 345 (5th Cir. 2001) (reviewing the district court's factual finding of prejudice for clear error and finding no due process violation in a five-year pre-indictment delay); United States v. Crouch, 84 F.3d 1497, 1500 (5th Cir. 1996) (en banc).

**D.  Minor or Minimal Participant Reduction**

United States Sentencing Guidelines Manual ("USSG") § 3B1.2, entitled "Mitigating Role" controls reductions in a defendant's base offense level for minimal or minor participation in an offense. USSG § 3B1.2(a) states that "[i]f the defendant was a minimal participant in any criminal activity, decrease by 4 levels." USSG § 3B1.2(b) states that "[i]f the defendant was a minor participant in any criminal activity, decrease by 2 levels." The guidelines define "minimal" participant as any participant "whose role is less culpable than the average participant" and "is plainly among the least culpable of those involved in the conduct of the group." UNITED STATES SENTENCING GUIDELINES § 3B1.2, cmt. 4 (2001). The guidelines define "minor" participant as any participant "whose role is less culpable than the average participant but whose role could not be described as minimal." Id. cmt. 5. The question of participation status is a factual question reviewable by this court under the clearly erroneous standard. United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995).

We find sufficient evidence from which the district court could conclude that Stapleton did not qualify as a "minor" or "minimal" participant. In addition to evidence that Stapleton was one of the four individuals who actually entered the bank, then

10

jumped over the counter, stuffed money in duffel bags and fled the scene with the money, the evidence reflects that he, Whiting, Thompson and Comb were paid substantially more money than the other two co-defendants.  See, e.g., United States v. Leal Mendoza, 281 F.3d 473, 477 (5th Cir. 2002); United States v. Tremelling, 43 F.3d 148, 153 (5th Cir. 1995).

### E.    Extraneous Offense Evidence

Pre-trial, Criswell filed a motion in limine requesting that the government "approach the bench to obtain a ruling on the admissibility or permissibility" before introducing (1) evidence of Criswell's prior criminal convictions, (2) evidence of his prior wrongs, crimes or acts, (3) evidence that he had ever been incarcerated, and (4) evidence that he had ever used, possessed, bought or sold drugs.  The district court preliminarily granted these requests.  At the pre-trial conference, Criswell's counsel also specifically requested that Whiting be precluded from testifying that the house where the six co-defendants met after the robbery was "Wayland's dope house."  While the district court stated that it recognized this as a "sensitive point," it did not make a preliminary ruling on the issue.

Criswell argues that the government violated FED. R. EVID. 402, 403 and 404(b) in offering "irrelevant, prejudicial, and plainly inadmissible" evidence in violation of the district court's order.

The district court struck Whiting's testimony regarding Criswell's "crack house" and testimony regarding Criswell being on parole.  In both instances, the jury was given a specific instruction regarding the improper nature of the evidence proffered

11

by the government and was instructed that it could not consider the evidence in making their verdict determination. As the references to Criswell's "crack house" and Criswell being on parole were the only references of their kind during the entire four-day trial and were not the subject of further testimony or argument during trial, we find that the district court's instructions cured any resulting prejudice. A new trial is not warranted.

Regarding the government's use of Rule 404(b) evidence of Criswell's involvement in the Dayton bank robbery, because Criswell failed to object to Thorn's testimony or the government's use of this evidence at trial, the district court's admission of this evidence is subject to plain-error review. Duffaut, 314 F.3d at 209.

This court has established a two-part test to determine the admissibility of Rule 404(b) evidence, under which the extrinsic offense evidence must (1) be relevant to an issue other than the defendant's character and (2) must possess probative value which is not substantially outweighed by undue prejudice. United States v. Bentley-Smith, 2 F.3d 1368, 1377 & n.11 (5th Cir. 1993). As to the first element, Criswell's plea of not guilty and the evidence adduced at trial placed Criswell's identity at issue. Thus, evidence of Criswell's participation in a similar crime (and evidence that he played a like role in this crime) went to prove identity, not to prove the character of Criswell in order to show action in conformity therewith. See Duffaut, 314 F.3d at 209

12

("Similarity of the extrinsic offense to the offense charged is the standard by which relevancy is measured under Rule 404(b)."). Regarding the second element, as this court "consistently ha[s] held that evidence of a defendant's prior conviction for a similar crime is more probative than prejudicial," we hold that the admission of the Rule 404(b) evidence here was not improper. Taylor, 210 F.3d at 318; see also United States v. Leahy, 82 F.3d 624, 637 (5th Cir. 1996) (noting that although some danger of prejudice is always present, "exclusion of extrinsic evidence based on its prejudicial effect should occur only sparingly"). Furthermore, in its charge to the jury, the court instructed that the jury was "here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged," and that "[t]he defendant is not on trial for any act, conduct, or offense not alleged in the indictment." This charge mitigated any prejudicial effect of the evidence of Criswell's involvement in the Dayton bank robbery.

**F.   Cumulative Error**

Finally, Criswell argues that the cumulative effect of error here requires a new trial. Although Criswell does not point to errors that should be aggregated, even assuming that error is manifest in his references to prosecutorial misconduct and the district court's admission of extraneous offense evidence, these few instances of misconduct, taken together, simply do not yield a

13

denial of the constitutional right to a fair trial.  <u>See, e.g.</u>, <u>United States v. Canales</u>, 744 F.2d 413, 430-31 (5th Cir. 1984).

**CONCLUSION**

Upon careful consideration of this case, we AFFIRM the judgments of conviction and sentences of the defendants.