# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 29, 2010

No. 10-10078

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TYRONE LUVOID HUTCHERSON

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:08-CR-044

Before KING, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:*

Defendant-appellant, Tyrone Luvoid Hutcherson, appeals his conviction of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). He also appeals his sentence of 240 months on each count, to run concurrently. Hutcherson raises four issues before this court. First, he argues that the district court erred in excluding testimony from F.B.I. Agent Bennett, who had testified before the grand jury that indicted Hutcherson's girlfriend, Tynisha Winkfield. Second, he asserts that the district court erred when it

---

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

refused to strike his written confession.  Third, he argues that the district court committed plain error when it failed to instruct the jury to disregard the prosecutor's closing argument statement about the defense's failure to call witness Bernie Dietrich.  Lastly, Hutcherson argues that the district court committed plain error in designating him as a career offender under the Federal Sentencing Guidelines.  We affirm Hutcherson's conviction and sentence.

## FACTS AND PROCEEDINGS BELOW

On April 3, 2008, the Hale County State Bank in Plainview, Texas was robbed and $10,905 in cash was taken.  On April 29 of the same year, the Happy State Bank in Amarillo, Texas was robbed and $11,352 in cash was taken.  Tyrone Luvoid Hutcherson was arrested in the Northern District of Texas on May 3, 2008 on a Kansas escape warrant.  On June 17, 2008, he was indicted by a federal grand jury for the Happy State Bank in Amarillo robbery.  Hutcherson's indictment for that robbery was precipitated by a tip to the Amarillo police by Robert Powell, the brother of Hutcherson's girlfriend Tynisha Winkfield.  Winkfield's parents, O'Neal and Barbara Yarborough, had seen security images of the Amarillo bank robbery on their local news station and had called Powell because they suspected the images were of Hutcherson.  Powell agreed with the Yarborough's identification and notified the authorities.

The grand jury which indicted Hutcherson also indicted Tynisha Winkfield on charges of misprision of felony under 18 U.S.C. § 4 and accessory after the fact under 18 U.S.C. § 3.  On July 1, 2008, Hutcherson mailed a handwritten letter to Winkfield from jail in which he confessed to the robbery of the Happy State Bank in Amarillo.  On September 1, 2009, the grand jury issued a superseding indictment against Hutcherson charging him

with the robbery of the Hale County State Bank in Plainview as well as the Amarillo robbery.  The superseding indictment did not include any charges against Winkfield, which were dropped at the government's request.

At trial, the jury heard considerable evidence against Hutcherson.  The bank teller at the Happy State Bank as well as the bank teller at the Hale County State Bank identified Hutcherson as the perpetrator.  Hutcherson was also identified both in a photo array and at trial by a woman who chased the robber in her car for a short distance as he ran from the Plainview bank with stolen cash.  Investigators who searched Hutcherson and Winkfield's residence at the time of Hutcherson's arrest discovered envelopes containing four hundred one-dollar bills as well as thirty two-dollar bills.  Thirty-two two-dollar bills were stolen from the Happy State Bank in Amarillo.  Additionally, Winkfield made two substantial cash payments on a car after the robberies.  One was made two days after the Plainview robbery in the amount of $1,300 and the second was made two days after the Amarillo robbery in the amount of $1,700.  The jury found Hutcherson guilty of both counts of robbery.  He was sentenced to 240 months on each count, the sentences to run concurrently.  The advisory guideline range calculated was based on the designation of Hutcherson as a career offender.

## DISCUSSION

### I. Exclusion of Agent Bennett's Testimony

At trial, the defense sought to call F.B.I Agent Bennett as a witness. Agent Bennett had testified before the grand jury in support of the indictment of Tynisha Winkfield.  Hutcherson argued that Agent Bennett gave knowingly false testimony to the grand jury that resulted in Winkfield's indictment.  One of the defense theories at trial was that the government used the indictment of Winkfield to apply pressure to Hutcherson.  At

3

Hutcherson's trial, Agent Bennett, called by the defense, testified outside the presence of the jury about the contents of his grand jury testimony. The court ruled that the defense had already been able to fully develop their theory and that Agent Bennett's testimony had little if any probative value and that was outweighed by the danger of confusion and prejudice.

We review a district court's ruling on the admissibility of evidence for abuse of discretion. *United States v. Taylor*, 201 F.3d 311, 314 (5th Cir. 2000). The harmless error doctrine applies, and the district court's evidentiary rulings will stand unless a substantial right of the complaining party is affected. *Id.* Non-constitutional trial error is considered harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Polasek*, 162 F.3d 878, 886 (5th Cir. 1998) (quoting *Kotteakos v. United States*, 66 S.Ct. 1239, 1253 (1946)).

In general, evidence that is relevant is admissible, but under the Federal Rules of Evidence, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. We conclude that the district court's decision to exclude Agent Bennett's testimony was not an abuse of discretion. Tyrone Hutcherson was the defendant in this case, not Tynisha Winkfield, and the testimony Agent Bennett gave outside the presence of the jury did not clearly establish that any prosecutorial misconduct was committed in connection with the indictment of Winkfield. Moreover, it was not an abuse of discretion for the district court to decide that any limited probative value was substantially outweighed by a danger of confusion and prejudice under Rule 403. The jury had already heard ample evidence about Winkfield's indictment and its

4

possible effect on Hutcherson's decision to confess.

Even if the district court had erred in excluding Agent Bennett's testimony, any error was harmless.  The defense was able to present to the jury in other forms its theory that the indictment of Winkfield was the cause of Hutcherson's confession letter.  It is highly unlikely that Agent Bennett's testimony would have had a substantial effect on the jury's verdict, due to the strength of the evidence against Hutcherson.

## II. Admission of Hutcherson's Written Confession

In its arguments to the district court in support of the admissibility of Agent Bennett's testimony, the defense urged as an alternative result that Hutcherson's written confession should be excluded as involuntary.[1]  In addition to excluding Agent Bennett's testimony, the district court refused to exclude the confession.  However, the parties and the district court did agree to include a general jury instruction on evaluating the voluntariness of a confession.

When reviewing a district court's ruling on a motion to suppress a confession, we use a clearly erroneous standard for lower court findings of fact.  *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005).  The ultimate question of the voluntariness of a confession is reviewed *de novo.  Id.*

We conclude that Hutcherson's confession was properly admitted. Hutcherson argues that this court has held that a defendant's own due process right to a fair trial can be violated by the admission of statements of others that are "derived through shocking and intentional police misconduct." *See United States v. Fortna*, 796 F.2d 724, 732, n.8 (5th Cir. 1986).  However,

---

[1]  The matter of exclusion of Hutcherson's confession was not otherwise raised below.

in this instance, it was Hutcherson's own statement that was admitted, and this court's precedent does not establish that police misconduct towards Winkfield should result in the exclusion of Hutcherson's confession. At all events, no police misconduct that rose to the level of "shocking and intentional" was established.  In its rationale for excluding Agent Bennett's testimony, the district court found that there was "no evidence at all that the indictment against Ms. Winkfield was ever expressly linked in any way whatsoever to Mr. Hutcherson changing his plea or taking any particular course of action."  Without a direct link between the indictment of Winkfield and Hutcherson's confession, there is no relevant police conduct that rises to the level of "shocking and intentional."

Hutcherson's argument that police coercion rendered his confession involuntary also fails.  We have previously held that confessions can be involuntary if a governmental official threatens to unlawfully indict or arrest a loved one.  *See Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986). Hutcherson has not shown that Winkfield's indictment was unlawful.  The district court made a finding of fact that Winkfield's indictment was not expressly linked to Hutcherson, and that finding is not clearly erroneous.[2] There was also sufficient evidence against Winkfield in the form of the car payments that she made and her statement that Hutcherson gave her cash to support an indictment for misprision of felony.  Additionally, Hutcherson has not alleged that there was ever any direct pressure by police to send a confession or that he was being interrogated while or immediately before he penned his confession letter.  This court has not extended the holding in *Allen v. McCotter* to situations this far removed from direct police coercion.  The

---

[2] Hutcherson did not testify below at trial (or at any suppression motion) on this (or any other) issue.

district court's decision to not exclude the confession letter Hutcherson wrote to Winkfield is affirmed.

### III. Prosecutor's Statement During Closing Argument

During the rebuttal portion of her closing argument, the prosecutor stated the following: "And as to Bernie Dietrich and the gold-tooth story, I submit to you that, if Bernie Dietrich was a credible witness, the Defense has the same subpoena power as anyone else, and you probably would have heard from him." Defense counsel never objected below to this statement made by the prosecutor. Bernie Dietrich was subpoenaed by the defense and was listed on the defense witness list, but he was not called to testify at trial. During the prosecution's case-in-chief, the defense counsel elicited testimony from Texas Ranger Marshall Thomas on cross examination that Bernie Dietrich had been present after the Plainview robbery and had told Agent Thomas "that the suspect had a gold tooth and possibly a tattoo on the right side of the neck" (characteristics which other evidence showed Hutcherson did not have).

This court reviews for plain error because defense counsel did not make an objection to the prosecutor's statement at trial. *United States v. Davis,* 487 F.3d 282, 284 (5th Cir. 2007). Plain error requires error that is clear and obvious and affects the defendant's substantial rights. *Id.* Generally, a court will only reverse based on plain error if it concludes that the failure to reverse for the error will have a substantial effect on the fairness, integrity, or reputation of judicial proceedings. *Id.*

In general, it is impermissible to draw any inferences from a party's failure to call a witness who is equally available to both sides. *United States v. Iredia*, 866 F.2d 114, 118 (5th Cir. 1989). However, a comment such as the one here that does not implicate a defendant's right to not testify is typically

not found to be plain error on appeal. *See United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004).   Because the prosecutor did not comment on Hutcherson's failure to testify but rather on a witness's failure to testify, we do not conclude that  Hutcherson's substantial rights were impaired.  The prejudicial effect of the prosecutor's statement seems minimal, given the substantial evidence against Hutcherson presented during the trial. Additionally, although the prosecutor did not object during the defense's cross-examination of Texas Ranger Marshall, the introduction of Dietrich's description of the bank robber through Marshall's testimony was likely hearsay not admissible for the truth of the matter stated by Dietrich.  This further decreases the likelihood of any meaningful prejudice to Hutcherson. The prosecutor's statement was not plain error that affected the defendant's substantial rights.

**IV. Designation of Hutcherson as Career Offender**

The Federal Sentencing Guidelines provide that a defendant qualifies for a career offender enhancement if he or she "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a)(3) (2009).  A controlled substance offense is defined as a federal or state law crime punishable by a prison term of more than one year that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . .with intent to manufacture, import, export, distribute, or dispense."  U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b) (2009).

For the first time on appeal, Hutcherson contends that the district court erred in applying the "career offender" designation because it relied solely on the pre-sentence report (PSR) prepared by his probation officer for its finding

that Hutcherson had two prior controlled substance offense felony convictions. Under *Shepard v. United States*, a district court is limited in what records it can use to characterize prior convictions. 125 S.Ct. 1254, 1263 (2005). A district court is "not permitted to rely on a PSR's characterization of a defendant's prior offense for enhancement purposes." *United States v. Garza-Lopez*, 410 F.3d 268, 273-74 (5th Cir. 2005). The government responded the district court had granted its unopposed motion to supplement the appellate record and has furnished us documents that allegedly support the career offender designation. One of these documents was the judgment convicting Hutcherson of a 1997 federal drug trafficking conviction in the Northern District of Kansas. This conviction clearly qualifies as a controlled substance offense and is not in dispute.

The government also furnished the charging instrument, the "Journal Entry," and the "Kansas Sentencing Guidelines Journal Entry of Judgment" for a 1994 Kansas state conviction. The conviction was under a now-repealed Kansas law that criminalized numerous offenses involving controlled substances, including "offer for sale." KAN. STAT. ANN. § 65-4127a(b) (1993).[3]

---

[3] Section 65-4127a(b) provided:
"(b) Except as authorized by the *uniform controlled substances act*, it shall be unlawful for any person to sell; offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; dispense or compound any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments thereto. Except as provided in subsections (c) and (d), any person who violates this subsection shall be guilty of a drug severity level 3 felony."

Article 4127a was entitled: "4127a. Unlawful *acts* regarding opiates, opium, narcotic drugs or designated stimulants; penalties; *acts* within 1,000 feet of school property."

Article 41 was entitled: "ARTICLE 41. *CONTROLLED SUBSTANCES UNIFORM CONTROLLED SUBSTANCES ACT*."

Hutcherson's conviction on this charge was reversed and remanded for retrial in *State v. Hutcherson*, 968 P.2d 1109 (Kan. Ct. App. 1998).  Following remand, Hutcherson was convicted again in 1999, this time by a bench trial, under the same statute.  Hutcherson argues that this conviction does not qualify as a career offender predicate.   We have previously held that an offer to sell without the added element of possession is not a controlled substance offense under the definition of section 4B1.2 of the Federal Sentencing Guidelines.  *United States v. Price*, 516 F.3d 285, 288-89 (5th Cir. 2008). Because Hutcherson did not raise the issue of his designation as a career offender at trial, the issue is reviewed for plain error on appeal.  *United States v. Jones*, 596 F.3d 273, 276 (5th Cir. 2010).

Under our precedent, for purposes of determining whether a prior conviction will enhance an offender's guidelines range, this court looks "to the elements of the prior offense, rather than to the facts underlying the conviction," but it is also permitted to "consider documents such as the charging instrument and the jury instructions." *United States v. Gonzales*, 484 F.3d 712, 714 (5th Cir. 2007) (quoting *United States v. Garza-Lopez*, 410 F.3d 268, 273 (5th Cir. 2005)).  Looking at the elements alone, Hutcherson could have been convicted under the Kansas statute merely for offering to sell a controlled substance without actually possessing the drug.  The "Kansas Sentencing Guidelines Journal Entry of Judgment" has a handwritten notation that describes Hutcherson's offense as "Possession w/ Intent to Sell, Deliver, or Dispense Opiate(s)."  We have held that it is permissible for this court to look beyond the elements of the statute to other documents that might narrow the charge to the crime the defendant was actually convicted of, but the documents in question must contain language that reflects a "conscious judicial narrowing of the charging document." *United States v.*

10

*Gutierrez-Ramirez*, 405 F.3d 352, 358 (5th Cir. 2005).  The above case dealt with a California "abstract of judgment" that is in some respects similar to the document at issue in this case.  However, both this court in *Gutierrez-Ramirez* and the Ninth Circuit in *United States v. Navidad-Marcos* emphasized that "the [California] abstract of judgment is generated by the court's clerical staff" and thus does not qualify as an "explicit factual finding by the trial judge." *Gutierrez-Ramirez*, 405 F.3d at 359.  *See United States v. Navidad-Marcos*, 367 F.3d 903 (9th Cir. 2004).  In this instance, we conclude that it is not clear or obvious that our holding in *Gutierrez-Ramirez* is controlling.  There is nothing here to indicate that the entries in the "Journal Entry of Judgment" at issue were made by anyone other than the Kansas judge who presided over Hutcherson's bench trial, given that the document bears the judge's signature.  There is no evidence that the document was anything other than a finding made by the trial judge.[4]  Thus, we hold that it was not plain error – error that is "clear" or "obvious," *United States v. Olano*, 113 S.Ct. 1770, 1777 (1993)[5] – for the district court to find that the "Kansas Sentencing Guidelines Journal Entry of Judgment" was a "conscious judicial narrowing" intended to indicate that the district court convicted Hutcherson of an offense that included the necessary element of possession.[6]  We affirm

---

[4]  Moreover, unlike the situation in *Navidad-Marcos*, 367 F.3d at 909, and *Gutierrez-Ramirez*, 405 F.3d at 358, the entry here may not reasonably be construed as one which "merely summarized the title of the statute of conviction."  See note 3 *supra*.

[5]  If the error is plain and if it also affects the appellant's substantial rights, we have discretion to reverse on that account, but only if the failure to do so seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Olano* at 1779; *Jones*, 598 F.3d at 276.

[6]  We note that the opinion in *State v. Hutcherson*, 968 P.2d 1109 (Kan. Ct. App. 1998) reverses and remands for retrial Hutcherson's conviction for possession with intent to sell cocaine, sustaining Hutcherson's contention that the trial court erroneously failed to

11

Hutcherson's concurrent sentence of 240 months for each robbery conviction.

## CONCLUSION

For the foregoing reasons, the appellant's conviction and sentence are affirmed.

---

instruct the jury on the lesser included offense of simple possession, as there was "evidence to support a finding that Hutcherson was in possession of the cocaine" and, "although the evidence against Hutcherson was strong and persuasive . . . the evidence at trial did not exclude a theory of guilt on the lesser offense." *Id.* at 1112-13.