# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-50752
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOE LUIS SAUCEDO-MUNOZ,
ALSO KNOWN AS JOE LUIS SAUCEDO,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____

m 01-50904
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSE LUIS SAUCEDO-MUNOZ,
ALSO KNOWN AS JEHOVA MIRANDA,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

September 23, 2002

Before DAVIS, SMITH, and BENAVIDES,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jose Saucedo-Munoz appeals his conviction of possession with intent to distribute marihuana and cocaine, illegal reentry following deportation, and making a false statement. Finding no error, we affirm.

I.

State troopers Ruben Garcia and Ethan Upshaw stopped to assist two stranded motorists standing next to a pickup truck with its hood raised and gas tank opened. An empty gas jug lay next to the truck.

The two men told Garcia they were out of gas. When Garcia asked where they had last refueled, they said they had done so in Van Horn with nine dollars worth of gas. Garcia found this suspicious, because he knew Van Horn was 108 miles away; he would not have expected a pickup truck to run out of gas after traveling such a short distance. Garcia then asked whether the truck's gas gauge worked, and the men replied that it did not. This further aroused Garcia's suspicion, because he knew from experience and training that a vehicle's gas gauge usually will not work if the gas tank is loaded with contraband. Garcia testified that both men seemed nervous and evasive.

Garcia then tapped on the gas tank with his baton and heard a "thud" that he said was inconsistent with the sound that would be produced by tapping on an empty tank or a tank filled with fluid. Upshaw also tapped on the tank with his baton and heard a similar thud. Garcia concluded that the tank contained something more than gasoline.

When asked for identification, Saucedo-Munoz produced a New Mexico identification card bearing the name Jehova Miranda. The other man produced a border crossing card bearing the name Gerardo Saucedo-Diaz. Saucedo-Munoz then asked the officers for a ride to a gas station to buy more gas.

During the trip to the station, Saucedo-Munoz, Garcia, and Upshaw conversed. Saucedo-Munoz stated that he had met Saucedo-Diaz four years earlier at a bar in Juarez. Garcia observed that, according to Saucedo-Diaz's identification, Saucedo-Diaz would have been fourteen years old at that time, too young to be in a bar. Saucedo-Munoz initially had difficulty explaining this apparent discrepancy but finally explained that people in Mexico go to bars at young ages.

At the station, Saucedo-Munoz purchased a gas jug after realizing that he had left his

2

empty jug behind at the truck. When they arrived back at the truck, Saucedo-Munoz filled the truck with the gas and asked the officers to follow him and Saucedo-Diaz to a nearby gas station. After the officers followed them to a station in Pyote, Saucedo-Munoz paid the attendant and filled the tank with only three dollars worth of gas before the pump stopped.

Saucedo-Munoz acted surprised and attempted to blame the problem on the station's pump, which he claimed was broken. When Upshaw observed that Saucedo-Munoz had paid the attendant only three dollars, Saucedo-Munoz paid another seven dollars. After six dollars of gas were put into the truck, the tank would take no more. Both men were placed under arrest.

The truck was taken to a wrecking yard, where a drug dog alerted to the vehicle. Garcia observed that the gas gauge was broken. The truck was placed on a hydraulic lift, and the officers noted that there were fresh scratches on the bolts and screws holding the tank in place. Saucedo-Munoz threatened to sue if nothing was discovered. After removing the tank, the officers discovered forty-three bundles of cocaine and marihuana inside.

## II.

Saucedo-Munoz pleaded guilty of illegal reentry following deportation, in violation of 8 U.S.C. §§ 1326(a),(b)(2), and making a false statement to a federal officer, in violation of 18 U.S.C. § 1001(a)(2). Before trial on charges of possession with intent to distribute marihuana and cocaine, in violation of 21 U.S.C. § 841(a)(1), Saucedo-Munoz moved unsuccessfully to suppress evidence. A jury convicted him of both offenses. He appeals the convictions and the revocation of his supervised release.

## III.

Saucedo-Munoz argues that the district court improperly instructed the jury regarding deliberate ignorance.[1] The deliberate ignorance instruction is used "to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *United States v. Wells*, 262 F.3d 455, 465 (5th Cir. 2001) (citation and internal quotation omitted). The instruction allows the jury to convict without finding that the defendant actually was aware of the existence of illegal conduct. *United States v. Cartwright*, 6 F.3d 294, 301 (5th Cir. 1993).

Where, as here, the *mens rea* required for conviction is that the defendant acted "knowingly" or "intentionally," a deliberate ignorance instruction creates a risk that the jury might convict for negligence or stupidity. *Id.* (citations omitted). The deliberate ignorance instruction "should only be given when a defendant claims a lack of guilty knowledge and the poof at trial supports an inference of deliberate indifference." *Wells*, 262 F.3d at

---

[1] The deliberate ignorance charge read as follows:

You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. However, even so, if you find that the Defendant actually believed that the transaction did not involve marihuana or cocaine, then you must acquit the defendant.

3

465 (quoting *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995)).

A deliberate ignorance instruction is reviewed "using the standard of whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to principles of law applicable to the factual issues confronting them." *United States v. Wisenbaker*, 14 F.3d 1022, 1027 (5th Cir. 1994) (citation and internal quotation omitted). The instruction is justified where "the evidence shows (1) subjective awareness of a high probability of the existence of illegal conduct and (2) purposeful contrivance to avoid learning of the illegal conduct." *United States v. Threadgill*, 172 F.3d 357, 368 (5th Cir. 1999) (citation omitted).

The record reflects that Saucedo-Munoz was subjectively aware of a high probability that the gas tank contained contraband. He knew that the truck had run out of a full tank of gas after traveling only 108 miles and that the gauge was broken.[2] At the gas station in Pyote, Saucedo-Munoz tried to fool the officers by purchasing only three dollars worth of gas and then claiming that the pump was broken. He also produced a New Mexico identification with a false name. Both officers testified that he seemed nervous and evasive throughout the encounter. *See United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) ("Evasive and erratic behavior may be evidence of guilty knowledge.").

Evidence tending to show that Saucedo-Munoz purposely contrived to avoid learning the existence of contraband is less apparent. Because he did not testify, there was no opportunity for the government to conduct cross-examination regarding his knowledge of how the drugs were put into the tank. We are mindful that where "the choice is simply between a version of the facts in which the defendant had actual knowledge, and one in which he was no more than negligent or stupid, the deliberate ignorance instruction is inappropriate." *United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990). Nevertheless, Saucedo-Munoz's failure to testify or present evidence does not render a deliberate ignorance instruction invalid.

A defendant's contrivance to avoid learning the existence of illegal conduct may be established by direct or circumstantial evidence. *Id.* at 952. As we have noted, Saucedo-Munoz tried to fool the officers by putting only three dollars worth of gas in the tank, and then claiming the pump was broken. Depending on how this action is construed, it could show that Saucedo-Munoz had actual knowledge that the tank contained contraband. On the other hand, the charade might be construed as an attempt to avoid discovery of that which he believed highly probable.

Whichever it was, the court did not err by giving a deliberate ignorance instruction. Although our caselaw prohibits a deliberate ignorance instruction where there is evidence of only *actual* knowledge, *Threadgill*, 172 F.3d at 369, we are unaware of any cases suggesting that a deliberate ignorance instruction

---

[2] Although the average person might not infer the presence of contraband from this fact alone, Saucedo-Munoz was previously convicted of a similar offense. He therefore was more likely than the average person to infer that the inability to fill a gas tank with more than nine dollars worth of gas and a broken gas gauge were indicative of the presence of contraband. The admissibility of Saucedo-Munoz's prior offense is discussed *infra* part III.

is improper where evidence may be construed as showing either actual knowledge or contrivance to avoid learning the truth.

Instead, our precedent suggests that a deliberate ignorance instruction may be given alongside evidence of actual knowledge.[3] Where, as here, a defendant claims ignorance as his defense but refuses to testify,[4] he should not be able to avoid a deliberate ignorance instruction because his conduct might also be construed as evincing actual knowledge.

By giving a deliberate ignorance instruction, the court did not create a risk that the jury would convict Saucedo-Munoz for mere negligence or stupidity. Saucedo-Munoz's affirmative attempt to fool the officers, his production of a false identification, and experience in narcotics trafficking suggest that if he did not have actual knowledge of the presence of drugs in the tank, he was at the very least turning a blind eye. In addition, the court provided a safeguard by instructing the jury that it could not find him guilty if it believed he was merely careless or negligent or did not realize that the underlying transaction involved narcotics.[5]

## IV.

Saucedo-Munoz contends the district court abused its discretion by admitting evidence of his 1988 conviction of smuggling cocaine in the wheel well of a pickup truck. The court admitted the evidence for the limited purpose of determining whether Saucedo-Munoz "had the state of mind or intent necessary to commit the crime charged in the indictment" and

---

[3] *See United States v. Farfan-Carreon*, 935 F.2d 678, 681 (5th Cir. 1991) (affirming deliberate ignorance instruction alongside evidence that the defendant reacted violently when asked whether he was carrying contraband); *Lara-Velasquez*, 919 F.2d at 952 ("Courts also have determined that the circumstances of the defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge."); *United States v. de Luna*, 815 F.2d 301, 302 (5th Cir. 1987) (finding deliberate ignorance instruction proper alongside evidence that the defendant confessed to two witnesses); *United States v. Restrepo-Granda*, 575 F.2d 524, 528-30 (5th Cir. 1978) (finding deliberate ignorance instruction proper while concurrently finding evidence of actual knowledge).

In *United States v. Threadgill*, 172 F.3d 357 (5th Cir. 1999), we concluded that the district court improperly gave a deliberate ignorance instruction where there was strong evidence of actual knowledge, but "little evidence that the defendants purposefully contrived to avoid knowing that their actions were unlawful." *Id.* at 369. The evidence revealed that "the defendants knew that their conduct was criminal and took elaborate measures to hide it." *Id.* Although Saucedo-Munoz's conduct might be similarly construed, it is also possible that he turned a blind eye to what he believed was the presence of contraband. The jury was entitled to convict on either theory.

[4] Although Saucedo-Munoz did not offer any evidence, defense counsel presented a theory of ignorance in his opening statement and closing argument, contending that Saucedo-Diaz was the person who had tried to "smuggle this dope."

[5] Because we conclude that the court did not err by instructing the jury as to deliberate ignorance, we need not undertake a harmless-error analysis. An error in giving the deliberate ignorance instruction is "harmless where there is substantial evidence of actual knowledge." *Wells*, 262 F.3d at 466 (citation and internal quotation omitted).

whether he had "acted according to a plan or in preparation for the commission of a crime."

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). Extrinsic evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Bentley-Smith*, 2 F.3d 1368, 1377 (5th Cir. 1993). Evidence is admissible under rule 404(b) if it relates to an issue other than the defendant's character and its probative value is not substantially outweighed by undue prejudice.[6]

Evidence of the prior conviction is admissible to show that Saucedo-Munoz knew drugs were concealed in the gas tank and that he intended and planned to transport drugs in a hidden spot outside the vehicle's passenger compartment or trunk.[7] Nonetheless, Saucedo-Munoz argues that the conviction is inadmissible because its probative value is not sub-

stantially outweighed by its prejudicial effect. *See* FED. R. EVID. 403.[8]

This court has "consistently . . . held that evidence of a . . . conviction for a similar crime is more probative than prejudicial and that any prejudicial effect may be minimized by a proper jury instruction." *United States v. Taylor*, 210 F.3d 311, 318 (5th Cir. 2000). The district court properly instructed the jury that it was to consider Saucedo-Munoz's prior offense only so far as it demonstrated the requisite intent. This mitigated any danger that the jury considered the evidence improperly as proof of bad character.

V.

Saucedo-Munoz avers that the district court erred in denying his motion to suppress illegally obtained evidence as violative of the Fourth Amendment. Warrantless searches are "per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001). Saucedo-Munoz argues that the officers conducted a warrantless search by tapping on the gas tank with their batons and that the search was not supported by probable cause.[9]

---

[6] *United States v. Misher*, 99 F.3d 664, 670 (5th Cir. 1996); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

[7] *United States v. Ortega-Chavez*, 682 F.2d 1086, 1091 & n.6 (5th Cir. 1982) (holding that evidence of three prior convictions, in which defendant had used the same vehicle with a hidden compartment to transport illegal aliens, was properly admitted as evidence of knowledge and intent and as showing similarity of conduct); *see also United States v. Lazcano-Villalobos*, 175 F.3d 838, 845-47 (10th Cir. 1999) (affirming admission of prior offense as proof of knowledge of the use of concealed compartments for the transportation of controlled substances).

---

[8] Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

[9] Apart from challenging the gas tank tap as an impermissible search, Saucedo-Munoz does not otherwise challenge the existence of probable cause for the removal and search of the tank following his arrest.

In reviewing the denial of an evidentiary suppression motion, we accept the district court's findings of fact unless clearly erroneous, but we review *de novo* its ultimate conclusion as to the constitutionality of the law enforcement action. *United States v. Chavez-Villarreal*, 3 F.3d 124, 126 (5th Cir. 1993). We review the evidence in the light most favorable to the government. The denial of a suppression motion will be upheld "if there is any reasonable view of the evidence to support it." *United States v. Tellez,* 11 F.3d 530, 532 (5th Cir. 1993) (citations omitted).

We need not decide whether the baton tap constituted a search within the meaning of the Fourth Amendment. The automobile exception to the Fourth Amendment's warrant requirement permits authorities to search a vehicle when they have probable cause to believe it contains contraband. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999). To the extent that the actions of Garcia and Upshaw did constitute a search, they were supported by probable cause.

Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Id.* In determining the existence of reasonable suspicion or probable cause, we do not isolate each factor of suspicion, but instead look to the totality of the circumstances.

*United States v. Arvizu*, 534 U.S. 266 (2002).

We agree with the district court's conclusion that the officers had probable cause to tap on the gas tank. Garcia knew, based on training and experience, that vehicles carrying contraband are unable to travel normal distances on a full tank of gas and often have broken gas gauges. Garcia had ample data in the aggregateSSthe failed gas gauge, the short distance before the truck ran out of gas, and the men's nervousnessSSto conclude that there was contraband in the tank. To hold otherwise would erroneously impute to Garcia the crime-ferreting wits of a layman, rather than a trained law enforcement officer. *Ornelas*, 517 U.S. at 696 (noting that probable cause is "viewed from the standpoint of an objectively reasonable *police officer*") (emphasis added).

## VI.

Saucedo-Munoz contends that the district court erred by refusing to adjust his offense level based on his claimed minor role in the offense.[10] Even if we were to accept Saucedo-

---

[10] In his brief, Saucedo-Munoz also argues that the district court erred in denying his request that the jury be instructed that it could convict him for the lesser included offense of misprision of a felony. Saucedo-Munoz admits, however, that he raises this issue on appeal only because an objection was made at trial and that he has located no authority in support of his argument. He acknowledges that "[i]t does not appear that misprision of [a] felony in any way relates to the delivery offenses."

Similarly, Saucedo-Munoz notes his objection at sentencing to the court's application of the sentencing guidelines; he objects to his counts being grouped pursuant to U.S.S.G. § 3D1.4. Saucedo-Munoz admits, however, that the court's applica-
(continued...)

Munoz's dubious contention that Saucedo-Diaz was the principal behind the crime, while Saucedo-Munoz acted only as a courier, we would not reduce the offense level.[11]

In any event, the evidence points to the conclusion that Saucedo-Munoz, not Saucedo-Diaz, acted as the principal. Saucedo-Munoz spoke to the officers, purchased the gas both times, filled the truck at the station, and was the one who threatened to sue at the wrecking yard. Furthermore, the pre-sentence report mentions that Saucedo-Munoz paid Saucedo-Diaz $2000 to accompany him on the trip. The district court's decision was no error.[12]

AFFIRMED.

---

[10](...continued) tion of the sentencing guidelines was "correctly made." We consider these issues inadequately briefed and therefore do not pass on their merits. *See* FED. R. APP. P. 28(a)(9)(A); *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (waiving argument for failure adequately to argue the issue).

[11] *See United States v. Edwards*, 65 F.3d 430, 433 (5th Cir. 1995) (stating that this court "has held previously that defendants . . . whose participation is limited to holding or delivering drugs, may not, despite their more limited role in the conspiracy, be eligible for a reduction their offense level").

[12] Because we affirm Saucedo-Munoz's conviction for possession with intent to distribute marihuana and cocaine, we do not address his argument that he was improperly sentenced as a Grade A offender under U.S.S.G. § 7B1.4. A defendant convicted of any "controlled substance offense" is classified as a Grade A offender. *See* U.S.S.G. § 7B1.1(a)(1)(ii).