United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2007**

Charles R. Fulbruge III
Clerk

**REVISED MARCH 29, 2007**
**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-20982

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TAJ KAREEM SMITH

Defendant-Appellant

Appeal from the United States District Court
For the Southern District of Texas

Before DAVIS and STEWART, Circuit Judges, and CRONE[*], District

Judge.

W. EUGENE DAVIS, Circuit Judge:[**]

In this direct criminal appeal, Taj Kareem Smith ("Smith")

challenges his conviction and sentence for (1) possession with

---

[*]District Judge of the Eastern District of Texas, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

intent to distribute one kilogram or more of PCP, (2) possession of a firearm in furtherance of a drug trafficking crime, and (3) possession of a firearm by a convicted felon (Counts I, II, & III respectively).  Finding sufficient evidence to support the jury's verdict and rejecting defendant's other points of error, we AFFIRM.

I.

On April 5, 2004, Houston police officers went to execute a search warrant at the Quail Chase Apartments, apartment number 2702, and arrest warrants for the Defendant Smith and his companion, Schamika Satchell ("Satchell").  Officers observed Smith and Satchell enter the apartment along with three children, stay for a short time, and then leave again.  After they left the apartment, officers arrested Smith and Satchell in the apartment parking lot and used Smith's key to enter the apartment.

During their search, after detecting the strong smell of PCP, the officers found two Gatorade bottles and a Pine Sol bottle in a cabinet under the kitchen sink which together contained 1.4 kilograms of liquid PCP.  Behind the bottles were small plastic vials.  A loaded rifle was also found behind the living room sofa. In the bedroom, the police found men's clothes, Smith's Texas identification card, Smith's Texas Department of Corrections identification card, and two prescription pill bottles, one with Smith's name and another with his mother's.  The police also found $1,360 in cash inside the drawer of a nightstand by the bed.

At the scene, after receiving a Miranda warning, Smith told a

-2-

police officer that he stayed at the apartment occasionally and left his clothing and identification there, but that it was not his permanent address.

Smith's first trial ended in a mistrial after the district court found that the prosecutor had improperly gone outside of the record and mischaracterized evidence during closing argument.

At Smith's second trial, in addition to testimony about the April 5, 2004, arrest, police officers testified that on April 1 and April 2, 2004, they had observed an individual fitting Smith's description engaging in what they concluded were narcotics transactions with a number of people who entered and exited the Quail Chase apartment unit for short visits. The officers also told the jury that the small plastic vials recovered from under the kitchen sink would be useful in the distribution of the nearly $100,000 worth of PCP found in the apartment. In addition, over defense objection, the government introduced two of Smith's previous convictions for the sale of a controlled substance (crack cocaine) in 1998.

On the issue of whether Smith lived in the apartment, the government presented the testimony of Kreshelle Dixon ("Dixon"), who testified that she was the lease holder of the apartment involved in the case and that she had subleased the apartment to Satchell. Dixon indicated that on "some occasions" Smith was present in the apartment when she visited Satchell and that Smith on "some occasions," answered the phone, even when Satchell was not

-3-

there.  A police officer also testified that the clothes found at the apartment appeared to be the right size to fit Smith.

At the close of the case, the jury convicted Smith on all three counts.

At sentencing, the primary issue was whether Smith's two previous Texas convictions for delivery of a controlled substance should be treated as a single conviction rather than two separate convictions for purposes of sentencing.  The convictions resulted from Smith's sale of crack cocaine to an undercover police officer, once on December 9, 1998, and again on December 10, 1998.  The district court declined to treat Smith's two convictions as a single conviction, and as a result, the court found that it was required, pursuant to 21 U.S.C. § 841(b)(1)(A), to sentence Smith to life imprisonment on Count I (possession with intent to distribute).[1]

On appeal, Smith raises 5 issues: (1) the evidence was insufficient to support the verdict and life sentence on Count I and Count II of the indictment; (2) the district court erred in admitting, as Rule 404(b) evidence, the two previous drug convictions; (3) the district court erred by not dismissing the charges against Smith on double jeopardy grounds; (4) the district

---

[1]In addition, the district court sentenced Smith to 60 months on Count II (firearm in furtherance of drug trafficking) to run consecutively with Count I, and 120 months on Count III (felon in possession of a firearm), to run concurrently with Count I, for a total term of imprisonment of life plus 60 months. Smith does not challenge the sentences imposed on those counts.

court erred in not aggregating Smith's prior convictions for purposes of sentencing; (5) Smith's life sentence was unconstitutionally imposed.

## II.

Smith first argues that the district court erred in failing to grant his motion for judgment of acquittal on possession of the PCP with intent to distribute based on his argument that the evidence was insufficient to support the charge.

Where the defendant has preserved his challenge to the sufficiency of the government's evidence, we "review <u>de novo</u> the district court's denial of a motion for judgment of acquittal."[2] Viewing all evidence in the light most favorable to the verdict, the court must determine whether any rational jury could conclude from the evidence presented at trial that the government has proven all the elements of the offense beyond a reasonable doubt.[3]

To convict for the offense of possession with intent to distribute, the government must prove that the defendant knowingly possessed a controlled substance with the intent to distribute it.[4] Smith argues that the government has failed to establish that he

---

[2]<u>United States v. Carbajal</u>, 290 F.3d 277, 289 (5th Cir. 2002).

[3]<u>Id.</u>

[4]<u>United States v. Jones</u>, 133 F.3d 358, 362 (5th Cir. 1998).

-5-

knowingly possessed the PCP.[5]

Possession may be actual or constructive and may be proved by circumstantial evidence.[6] Constructive possession can be established by showing (1) ownership, dominion or control over an item; or (2) dominion or control over the place where the item is found.[7] Although a defendant's exclusive occupancy of a premises may establish his dominion and control over an item found there, his joint occupancy of a premises cannot, by itself, support the same conclusion.[8] Where the defendant jointly occupies or controls a premises, the government must, in addition to showing control over the place where the item was found, present evidence to support at least a plausible inference that the defendant had knowledge of and access to the illegal item.[9]

Smith first argues that he did not live in or control the

---

[5]Smith concedes that if the government makes its case on possession, other evidence, such as the quantity of PCP and the vials found in the kitchen, allows a reasonable jury to infer intent to distribute.

[6]Id.

[7]United States v. Salinas, -- F.3d ---, 2007 WL 646132, *6 (5th Cir. March 05, 2007) (citing United States v. De Leon, 170 F.3d 494, 496 (5th Cir.1999)).

[8]United States v. Hinojosa, 349 F.3d 200, 203-04 (5th Cir. 2003); see also United States v. Martin, 483 F.2d 974, 975 (5th Cir. 1973) (mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located is insufficient to support a finding of possession).

[9]De Leon, 170 F.3d at 497.

Quail Chase apartment unit with Satchell. In support, he cites testimony from his grandmother that he was living primarily with her during the time surrounding his arrest. He notes that the pill bottles recovered at the apartment corroborate this testimony because one of the prescriptions had his grandmother's address and the other had his mother's address. Alternatively, Smith argues that, even if the government has established that he lived in the apartment with Satchell, the evidence was insufficient to establish that he exercised dominion and control over the PCP. Smith pointed out that the PCP was hidden under the sink in non-obvious bottles, his fingerprints were not found on the PCP bottles, and he did not have PCP or PCP residue on his person when he was arrested. Because Satchell and perhaps others had access to the apartment, Smith continues, the evidence is consistent with a scenario where others placed the PCP in the kitchen cabinet without his knowledge.

Even if we assume Smith did not live full time at the Quail Chase apartment, the government presented substantial evidence in support of the conclusion that Smith exercised joint dominion and control over the premises. Here, along with the presence of Smith's identification cards, Smith's pill bottles, Smith's gun, and clothes which would fit Smith, the government presented evidence that Smith possessed a key to the apartment as well as the testimony of Dixon that Smith was at times in the apartment alone.

This evidence strongly supported a finding of joint occupancy.[10]

Further, we are satisfied that the circumstantial evidence supports at least a plausible inference that Smith knew of the PCP in the apartment.  The strong scent of the PCP emanating from the three bottles beneath the sink, Smith's multiple short term visitors on April 1 and 2 of 2004, the quantity and value of the PCP recovered, the loaded rifle (which Smith admitted he was holding), the cash inside the nightstand, the small vials, and Smith's previous convictions could lead a reasonable jury to infer that Smith knew about and sold PCP out of the apartment.

When taken as a whole, the evidence suggests that Smith knowingly possessed the PCP.  The jury was entitled to conclude that the totality of these circumstances made it unlikely that Smith was ignorant of the PCP's presence.

## III.

Smith next argues that the district court erred in admitting evidence of two previous convictions for delivery of a controlled substance.

We review alleged violations of Rule 404(b) under the two-pronged test of United States v. Beechum.[11]  That test requires

---

[10]Cf. De Leon, 170 F.3d at 496 (defendant exercised control and dominion over his girlfriend's house where evidence showed, among other things, the defendant had authority to keep personal belongings in the house and to come and go as he pleased).

[11]582 F.2d 898 (5th Cir. 1978).

us to verify (1) that the evidence of extraneous conduct is relevant to an issue other than a defendant's character, and (2) that the evidence possesses probative value that is not substantially outweighed by its prejudicial effect and is otherwise admissible under Rule 403.[12] A district court's decision to admit extrinsic evidence under Rule 404(b) is reviewed under an abuse of discretion standard.[13]

On the first Beechum prong, because Smith pleaded not guilty to the charge of possession with intent to distribute, Smith placed both his knowledge of the PCP found in the apartment and his intent to distribute at issue.[14] We have repeatedly held that previous drug sale convictions are proper evidence on the issue of knowledge and intent to sell.[15]

---

[12]Id. at 911.

[13]United States v. Carrillo, 981 F.2d 772, 774 (5th Cir. 1993).

[14]See United States v. Pompa, 434 F.3d 800, 805 (5th Cir. 2005).

[15]See, e.g., United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006) (prior drug conviction for possession of crack was relevant to establishing defendant's intent and knowledge regarding crack found at his house); United States v. Taylor, 210 F.3d 311, 318 (5th Cir. 2000) (evidence of prior conviction for possession of cocaine base with intent to deliver is relevant to prove intent to distribute cocaine base); see also Beechum, 582 F.2d at 913 ("Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense, the evidence satisfies the first step under rule 404(b). The extrinsic offense is relevant . . . to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent.").

On the second Beechum prong, Smith argues that his prior convictions for sales of a different drug (crack cocaine) in a different city and more than five years before his arrest, while arguably probative on his intent to sell, are not probative of his knowledge that PCP was in the apartment. Since the government produced sufficient evidence that whoever controlled the drugs intended to distribute, Smith continues, any probative value of the evidence on the issue of intent was outweighed by the unfair prejudice on the issue of Smith's knowledge-the central issue in the case.

We conclude that the district court did not abuse its discretion in admitting evidence of Smith's convictions. On numerous occasions, this court has declined to find an abuse of discretion when the district court admitted evidence of prior drug activities as more probative than prejudicial.[16] We have further observed that "any prejudicial effect [from the introduction of similar past acts] may be minimized by a proper jury instruction."[17] Smith's prior drug trafficking conviction, although with a different drug, was for the same conduct at issue here and thus was

---

[16]United States v. Harris, 932 F.2d 1529, 1534 (5th Cir. 1991) (citing cases); see also United States v. Saucedo-Munoz, 307 F.3d 344, 350 (5th Cir. 2002) ("This court has consistently held that evidence of a conviction for a similar crime is more probative than prejudicial . . . .") (alternations and citation omitted).

[17]Saucedo-Munoz, 307 F.3d at 350 (5th Cir. 2002) (quoting Taylor, 210 F.3d at 318).

probative of his knowledge of drug trafficking and his knowledge that drugs were in the apartment.[18]  Furthermore, the five year gap between the extrinsic and charged conduct in this case does not make it irrelevant.  We have upheld the admission of Rule 404(b) evidence where the time period between the present and former offense has been substantially longer.[19]  Finally, the district court gave the jury a detailed supplemental limiting instruction on the use of Rule 404(b) evidence.[20]  This instruction minimized any danger of unfair prejudice by instructing the jury to only consider the past drug sales after deciding that the government had established the presence of PCP at the apartment and for the limited purpose of determining whether Smith knew about and

---

[18]See United States v. Booker, 334 F.3d 406, 412 (5th Cir. 2003) (district court did not abuse its discretion in admitting evidence that the defendant possessed a large quantity of marijuana subsequent to his indictment on charges of conspiracy to distribute crack; evidence contradicted defendant's claim that his association with certain individuals was legitimate).

[19]Arnold, 467 F.3d at 885 (citing cases upholding use of 15 and 18 year old extrinsic acts).

[20]The district court instructed the jury as follows: "You must not consider any of [the defendant's past acts] in deciding if the defendant committed the acts charged in the indictment. However, you may consider this evidence for other very limited purposes.  If you find beyond a reasonable doubt . . . that the defendant did commit the acts charged in the indictment, then you may consider evidence of similar acts allegedly committed on other occasions to determine whether the defendant had the state of mind or the intent necessary to commit the crime charged in the indictment."

intended to sell the PCP found in the apartment.[21]  Accordingly, the district court did not abuse its discretion in admitting evidence of Smith's prior convictions.

IV.

Smith next contends that the district court plainly erred by declaring a mistrial and then refusing to dismiss the charges against him on double jeopardy grounds.

Because Smith raises his double jeopardy argument for the first time on appeal, we review for plain error.[22]  This court finds plain error when: (1) there was an error; (2) the error was clear or obvious; (3) the error affected the defendant's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[23]

The district court granted a mistrial in Smith's first trial based on concerns over both the prosecutor's comments during closing as well as the reliability of certain crime scene photos. Smith argues that the mistrial was the functional equivalent of an acquittal and therefore bars retrial.  The government contends that

---

[21]See United States v. Gonzalez, 76 F.3d 1339, 1347 (5th Cir. 1996) (finding no error where similar instruction was offered by district court); see also Taylor, 210 F.3d at 318 (evidence of prior possession with intent to distribute cocaine base more probative than prejudicial to prosecution for intent to distribute cocaine base where district court gave proper limiting instruction).

[22]United States v. Villegas, 404 F.3d 355, 358 (5th Cir. 2005).

[23]United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005).

Smith waived any double jeopardy claim when he requested a mistrial.

A motion by the defendant for a mistrial ordinarily removes any barrier to re-prosecution even if the defendant's motion is necessitated by prosecutorial or judicial error.[24]  In this case, the record makes clear that it was the defense which moved for a mistrial after rejecting a curative instruction to address the prosecution's error.[25]

Because the mistrial resulted from defense counsel's request, the district court committed no error, plain or otherwise, by granting Smith's request for a mistrial and then retrying him.[26]

V.

Smith next contends that the district court erred by treating his prior drug convictions as separate convictions for purposes of

---

[24]United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989).

[25]Beginning at the conclusion of the prosecution's closing, the court expressed its reservations about the prosecutor's mischaracterization of evidence and asked defense counsel if he was moving for a mistrial.  Defense counsel responded, "Your Honor, my client has asked me–has instructed me to ask for a mistrial . . . ."  Later, after the lengthy discussion regarding a possible curative instruction, the court asked defense counsel to "get with your client to decide whether you want to go to the jury and find out what the jury has to say . . . or not."  The court subsequently confirmed with defense counsel: "Do you have an objection to me granting this mistrial based on your earlier motion?"  Counsel responded: "No, Your Honor."

[26]Bauman, 887 F.2d at 549 ("Double jeopardy protection may be waived by consenting to a mistrial before a verdict is rendered.").

applying the sentencing enhancement under 21 U.S.C. § 841(b)(1)(A).

The issue of whether related convictions should be aggregated for purposes of the sentencing enhancements of 21 U.S.C. § 841(b)(1)(A) is a legal issue and thus is reviewed de novo.[27]

Section 841(b)(1)(A) provides that "[i]f any person commits a violation . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."

In United States v. Barr,[28] this court considered a defendant's challenge to a life sentence pursuant to this provision under substantially similar circumstances. In that case, we found that a defendant's sale of crack cocaine on two successive days to the same buyer constituted two separate offenses.[29] We explained that separate convictions constitute one offense when the violations occur simultaneously, but that the two drug sales on two different days did not qualify as a single offense.[30]

Smith claims that, unlike Barr, his sales of crack cocaine on consecutive days to the same undercover agent constitute a single criminal episode because he and the agent exchanged contact information on the day of the first sale. However, nothing in Barr

---

[27]See United States v. Adam, 296 F.3d 327, 330 (5th Cir. 2002).

[28]130 F.3d 711 (5th Cir. 1997).

[29]Id. at 712.

[30]Id.

-14-

indicates that the exchange of contact information between parties to a drug deal makes the sale simultaneous with a later drug deal. We have consistently treated two separate transactions, even when committed in quick succession, as different criminal episodes.[31] Accordingly, the district court did not err in treating the two convictions as separate predicate drug convictions for purposes of imposing a mandatory life sentence under section 841(b)(1)(A).

## VI.

Finally, Smith claims that his life sentence under 21 U.S.C. § 841(b)(1)(A) is unconstitutional because his prior convictions were neither alleged in the indictment nor proven to a jury beyond a reasonable doubt.

Smith acknowledges that his constitutional challenge to his sentence is currently foreclosed by Supreme Court precedent.[32]

## VII.

For the foregoing reasons, we AFFIRM Smith's conviction and sentence.

AFFIRMED.

---

[31]See, e.g., United States v. Washington, 898 F.2d 439 (5th Cir. 1990) (two robberies of the same convenience store a few hours apart were two separate convictions for purposes of enhancing defendant's sentence).

[32]See Almendarez-Torres v. United States, 523 U.S. 224 (1998) (no requirement that prior criminal history be alleged in the indictment and either admitted by defendant or proven to jury beyond a reasonable doubt).