# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 1, 2011

Lyle W. Cayce
Clerk

No. 09-40703

United States of America

Plaintiff-Appellee

v.

Edmundo Cisneros, Jr.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:04-CR-01106

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Edmundo Cisneros, Jr. was convicted of violating 21 U.S.C. §841(a)(1) and (b)(1)(A) by conspiring to possess with intent to distribute and possessing with intent to distribute more than 1,000 kilograms of marijuana. Cisneros appeals his conviction, contending (1) the evidence was insufficient to convict him, (2) evidence of a prior conviction should not have been admitted, and (3) a deliberate-ignorance instruction should not have been given to the jury. Cisneros also appeals the district court's application of a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentencing enhancement for a supervisory role in a criminal activity involving five or more participants.

## I.  Facts & Proceedings

*A.  Facts*

After receiving reports from a store employee, a Texas Department of Public Safety officer, Ricardo Rivera, who was assigned to a Drug Enforcement Administration ("DEA") Task force, observed an unidentified man load produce into a tractor-trailer.  Officers followed the tractor-trailer to a ranch in Hargill, Texas owned by Bertha Serna, who eventually testified that she had been approached the day before by two men and offered $500 to let them leave a tractor-trailer on her property.  One of these men was later identified as Cisneros's brother.

Officer Rivera and another officer, Roman Rodriguez, set up surveillance of the tractor-trailer, at first from forty yards away and then from eighty yards away.  The officers shared a pair of binoculars. The ranch was well-lit, with security lights and a bright light source emanating from the trailer.  Although the trailer was a refrigeration unit used to keep produce cool, its doors were frequently opened and shut over the course of the night.  The two officers observed that someone inside the trailer would knock on the door, his compatriot outside of the trailer would then open the door, and the men inside the trailer would then throw out plastic wrap and cardboard.  Neither officer was close enough to the trailer to hear the conversations among those men.  Agent Rodriguez later identified Cisneros as the man who repeatedly opened and closed the door to the trailer.  The two officers also observed three of Cisneros's co-conspirators, Claudio Romero Guevara, Jorge Gomez, and Gerado Llamas, going in and out of the trailer, as well as two other men who were not arrested.

No. 09-40703

At the ranch, the officers later found a "burn pile" of the plastic wrap and cardboard refuse, as well as four large rolls of commercial plastic wrap of the type used by smugglers to wrap marijuana. The officers did not observe any marijuana, but they did see men make repeated trips to the carport, which was large enough to store all the marijuana discovered later.

Around 6:00 a.m. the next morning, the tractor-trailer left the ranch, followed by a green car and a maroon pickup truck. The two surveillance officers, joined by Sergeant Ruben Morin, followed these vehicles. Shortly after leaving the ranch, the tractor-trailer was pulled over by DPS trooper Donato Vela for driving on the wrong side of the road and speeding through a curve. The driver of the trailer, Jose Gutierrez, later told law enforcement that he had been hired by Ruben Rivera to drive a load of produce to Houston and did not know Cisneros, Gomez, Guevara or Llamas.

As Vela stopped the tractor-trailer, the green car — which had been following immediately behind that rig for about ten miles — turned onto a side road and headed in the opposite direction. DEA Agent Juan Hernandez stopped the green car, which Cisneros was driving and in which Gomez was occupying the passenger seat. Neither of the two officers who had maintained surveillance of the tractor-trailer the previous night had seen the green car during their vigil. The red pick up truck, which was being driven by Guevara, was also stopped.

In the tractor-trailer, agents found bundles of marijuana mixed in with boxes of cabbages. They eventually recovered 160 boxes containing a total of 498 bundles of marijuana, which in toto weighed approximately 7,300 pounds, or 3,309 kilograms. The estimated value of the marijuana shipment was between $1 and $3 million.[1] Inside the red pickup truck agents found back-support belts

---

[1] The wide range in estimated value results from the variation in the price of marijuana across Texas. According to the testimony of Agent Rivera, in South Texas marijuana generally sells for $150 per pound whereas elsewhere in Texas marijuana sells for an average of $450

3

No. 09-40703

used for lifting heavy loads, a blue tarp that had been on the ground behind the trailer, and rain gear that Llamas had been wearing while loading the trailer on the previous night. The officers found a jacket in the green car, in the pocket of which they found a list of the numbered boxes in the trailer containing marijuana and the approximate location of each box within the pallets. A silver cell phone was found in the green car, and telephone records revealed numerous calls from this phone to telephones owned by Guevara, Gomez, Gutierrez, and Llamas that had been placed during the week leading up to the arrests. The only connection between this phone and Cisneros, however, was its presence in the car he was driving.

## B. Proceedings

Cisneros was indicted on two counts; (1) Conspiracy to possess with intent to distribution more than 1,000 kilograms of marijuana and (2) possession with intent to distribute more than 1,000 kilograms of marijuana, in violation of § 841(a)(1) and (b)(1)(A). Over Cisneros's objection at trial, the government introduced evidence that he had a 1992 state conviction for possession of more than five pounds but less than fifty pounds of marijuana. Cisneros called a physician, who testified that, because of a serious automobile accident in 1999 in which both of Cisneros's arms were fractured, he would not have been able to close and lock the trailer doors. The physician further testified, however, that it would have been possible for Cisneros to open and close those doors a few times each hour without locking them, although likely not over a continuous period of five or six hours.

After a jury found Cisneros guilty on both counts, he was sentenced to 240 months of confinement on Count One of the indictment, to run concurrently with

---

per pound.

No. 09-40703

240 months of confinement on Count Two, plus concurrent five year terms of supervised release on each count.

Cisneros timely filed a notice of appeal, but we later dismissed that appeal for want of prosecution, pursuant to Fifth Circuit Rule 42.3. A little less than a year later, Cisneros filed a motion under 28 U.S.C. § 2255 in which he alleged that his trial counsel failed to perfect a direct appeal of his conviction and sentence. Later that month, the district court permitted the original judgment to be re-entered, giving Cisneros ten days in which to file a timely notice of appeal. Cisneros did so.[2]

## II. Analysis

### A. *Sufficiency of the evidence*

Cisneros challenges the sufficiency of the evidence for both counts. Although his trial counsel moved for judgment of acquittal under Federal Rule of Criminal Procedure 29(a) after the government rested, Cisneros's counsel did not renew his motion at the close of all the evidence. As a result of counsel's failure to renew that motion, we review the challenge to the sufficiency of the evidence for manifest miscarriage of justice.[3] This standard is a difficult one to

---

[2] Cisneros's co-defendants, Llamas, Guevera, and Gomez, pleaded guilty to Count Two of the indictment (possession with intent to distribute more than 1,000 kilograms of marijuana). Gutierrez was tried with Cisneros, but the jury did not reach a verdict regarding Gutierrez on Count One.

[3] *United States v. Miller*, 576 F.3d 528, 529-30 (5th Cir. 2009) (quoting *United States v. Green*, 293 F.3d 886, 895 (5th Cir. 2002) ("Defendants' sufficiency of the evidence claims are reviewed under a stricter than usual standard, because none of the defendants renewed their motions for judgment of acquittal at the close of all evidence.")), *cert. denied*, 130 S. Ct. 652 (2009).

meet, as "the record must be devoid of evidence of guilt or the evidence must be so tenuous that a conviction is shocking."[4]

The elements of Count One, conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana, are "(1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy."[5] These elements can be inferred from circumstantial evidence.[6] The elements of Count Two, possession with intent to distribute more than 1,000 kilograms of marijuana, are "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substances."[7]

The evidence is sufficient to support convictions on both counts, especially in light of the heightened standard of review. Cisneros does not dispute the ample evidence of an operation involving the possession of marijuana with intent to distribute. The two officers observed several defendants load the trailer in which agents later found 7,300 pounds of marijuana. One officer identified Cisneros as the man who opened and closed the doors of the trailer throughout the night. Although medical testimony indicated that Cisneros would have had difficulty opening and closing the doors repeatedly, his ability to do so was not ruled out completely. And, Cisneros was arrested while driving a car in which a phone used to call the co-conspirators and a list of where the marijuana was located in the trailer were found.

---

[4] *United States v. Avants*, 367 F.3d 433, 449 (5th Cir. 2004) (citing *United States v. Burton*, 324 F.3d 768, 770 (5th Cir. 2003)).

[5] *United States v. Gallardo-Trapero*, 185 F.3d 307, 317 (5th Cir. 1999).

[6] *United States v. Watkins*, 591 F.3d 780, 788 (5th Cir. 2009) (citing *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994)).

[7] *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001) (citing *United States v. Thomas*, 120 F.3d 564, 569 (5th Cir. 1997)).

No. 09-40703

Admittedly, the evidence that Cisneros had knowledge of the conspiracy and knew that his compatriots were loading the trailer with marijuana is somewhat more tenuous.  Nevertheless, the high value of the shipment of marijuana, between $1 and $3 million, indicates that Cisneros likely had knowledge of the nature of the work done that night.  We have previously noted that the high value of a drug shipment is evidence of knowledge because "in the course of transporting millions of dollars of readily marketable marijuana through channels that should lack the protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders."[8] Another item of evidence supporting Cisneros's knowledge of the illegal nature of the operation is his attempt to evade police after the tractor-trailer was pulled over.[9]

"Weighing the evidence is a job for the jury, not for us."[10]  Additionally, our "focus is not on 'whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"[11] The evidence against Cisneros is sufficient for a rational trier of fact to find beyond a reasonable doubt that he knowingly and voluntarily participated in an agreement between two or more persons to possess a large amount of marijuana with the intent to distribute.  Certainly, no one would find the evidence so tenuous as to render the verdict shocking.

---

[8] *United States v. Martinez-Moncivais*, 14 F.3d 1030, 1035 (5th Cir. 1994) (quoting *United States v. Cruz-Valdez*, 773 F.2d 1541, 1547 (11th Cir. 1985)).

[9] *See United States v. Quiroz-Hernandez*, 48 F.3d 858, 865 (5th Cir. 1995).

[10] *United States v. Bueno*, 585 F.3d 847, 851 (5th Cir. 2009) (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003)), *cert. denied*, 130 S. Ct. 2359 (2010).

[11] *United States v. Pennington*, 20 F.3d 593, 599 (5th Cir. 1994) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

No. 09-40703

*B. Evidence of a prior conviction*

Cisneros challenges the admission of evidence of his 1992 state conviction for possession of marijuana, asserting that it was inadmissible under Federal Rule of Evidence 404(b). That rule governs the admissibility of evidence of prior crimes or bad acts and states, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible for other purposes. We review this issue under a heightened abuse of discretion standard.[12]

We apply the two-step *Beechum* test[13] for admission of extrinsic evidence of prior offenses or other misconduct under Rule 404(b). In the first step, "it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character."[14] Thus, when the evidence sought to be introduced is a prior offense, "its relevance is a function of its similarity to the offense charged."[15] Indeed, "where the prior offense involved the same intent required to prove the charged offense, that prior offense is relevant . . . ."[16] In the second step, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."[17] Limiting instructions from the court can diminish the risk of unfair prejudice posed by the admission of the evidence.[18]

---

[12] *United States v. Buchanan*, 70 F.3d 818, 831 (5th Cir. 1996).

[13] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*).

[14] *Id.*

[15] *Id.*

[16] *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009).

[17] *Beechum*, 582 F.2d at 911.

[18] *United States v. Crawley*, 533 F.3d 349, 355 (5th Cir. 2008) (citing *United States v. Nguyen*, 504 F.3d 561, 574-75 (5th Cir. 2007); *United States v. Saucedo-Munoz*, 307 F.3d 344,

No. 09-40703

The admission of Cisneros's 1992 conviction satisfies the first step of the *Beechum* test. Although the conviction was for a much smaller amount of marijuana, it is obviously similar to the charges in this case, *viz.*, conspiracy to possess and possession of a distribution amount of marijuana. Because the intent required is the same, the prior conviction is relevant.

The admission of the 1992 conviction also satisfies both the second step of the *Beechum* test and the balancing test of Rule 403. It is true that Cisneros's primary defense was that there was no proof that he was involved at all, not that he merely lacked intent or knowledge. Because the threshold issue was one of identity, "there was great danger that the jury would decide that [the defendant] was involved in the conspiracy because of his prior criminal conduct."[19]

Nevertheless, when the prior-conviction evidence was introduced, the district court instructed the jury that it was not admitted to prove Cisneros's propensity for committing crimes, but for the limited purpose of showing intent or knowledge. We presume that the jury will follow the trial court's limiting instruction.[20] Therefore, the admission of this evidence satisfies both prongs of the *Beechum* test and thus was proper.

## C. *Deliberate-ignorance instruction*

Cisneros also challenges the court's instruction on willful blindness, also known as deliberate ignorance. The challenged instruction read, in part:

Knowingly. The word 'knowingly' as that term has been used from time to time in these instructions means that the act was done

---

350 (5th Cir. 2002)).

[19] *United States v. Jackson*, 339 F.3d 349, 356 (5th Cir. 2003) (holding that admission of a prior conviction was an abuse of discretion where a defendant denied any involvement and there was substantial evidence of intent).

[20] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 762-63 (5th Cir. 2008) (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

9

No. 09-40703

voluntarily and intentionally not because of mistake or accident. You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Cisneros's counsel objected to the inclusion of the "deliberate blindness instruction" during the charge conference. Cisneros contends that the instruction unjustly lessened the government's burden of proof by imputing knowledge to Cisneros despite any evidence that he had deliberately "blinded" himself.

We review challenges to jury instructions for an abuse of discretion, provided they have been properly preserved.[21] When reviewing jury instructions "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government."[22] We have consistently upheld deliberate-ignorance instructions so long as they have the required factual basis.[23] Deliberate-ignorance instructions are appropriate when the evidence raises two inferences: (1) that the "defendant was subjectively aware of a high probability of the existence of the illegal conduct" and, (2) that the "defendant purposely contrived to avoid learning of the illegal conduct."[24] Deliberate-ignorance instructions should be given rarely because they create a

---

[21] *United States v. Elashyi*, 554 F.3d 480, 504 (5th Cir. 2008) (quoting *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005)).

[22] *United States v. Nguyen*, 493 F.3d 613, 619 (5th Cir. 2007) (quotation omitted).

[23] *United States v. Wofford*, 560 F.3d 341, 353 (5th Cir. 2009) (citing *United States v. Moreno*, 185 F.3d 465, 476 (5th Cir. 1999)).

[24] *United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir. 1992) (citation omitted), *abrogated in part on other grounds by United States v. Oreira*, 29 F.3d 185, 189 (5th Cir 1994).

No. 09-40703

risk that a jury might convict on the basis of negligence or stupidity when the actual *mens rea* required is knowing action.[25]

Cisneros is correct that there was little or no evidence adduced that he purposely avoided learning of the illegal conduct. The evidence shows that Cisneros was present at the trailer throughout the night when the other men concealed the marijuana, loaded it onto the trailer, and attempted to destroy the evidence. Cisneros helped those men by continually opening and closing the doors to the trailer, which suggests an active role in the drug smuggling instead of purposeful avoidance of learning of the illegal conduct. In light of the evidence presented, a deliberate-ignorance instruction was inappropriate.

Nevertheless, any error made in giving the instruction was harmless. We have concluded previously that when there is no evidence of conscious ignorance, the jury will not attribute negligence to the defendant.[26] Additionally, if there is substantial evidence of actual knowledge, then the error in giving the deliberate-ignorance instruction is generally harmless.[27] As noted above, there was significant evidence that Cisneros had actual knowledge of the nature of the activities occurring at the ranch that night, rendering the error harmless.

*D. Leadership enhancement*

Cisneros also contests the district court's decision to impose a three level enhancement based on the determination that Cisneros was a supervisor of more than five persons. A three-level upward enhancement is authorized by U.S.S.G

---

[25] *United States v. Cartwright*, 6 F.3d 294, 301 (5th Cir. 1993).

[26] *United States v. Boutte*, 13 F.3d 855, 859 (5th Cir. 1994) (citing *Cartwright*, 6 F.3d at 300). *But see United States v. Mendoza-Medina*, 346 F.3d 121, 134 (5th Cir. 2003) (noting that it cannot always be harmless when the evidence does not support the deliberate-ignorance instruction or giving the instruction could never be reversible error).

[27] *Mendoza-Medina*, 346 F.3d at 134 (quoting *Saucedo-Munoz*, 307 F.3d at 349 n.5).

§3B1.1 if the defendant was a manger or supervisor (but not an organizer or leader) of an activity that involved five or more participants. We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error.[28] A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.[29] In other words, we will deem factual findings clearly erroneous only when, based on the entire evidentiary record, we are "left with the definite and firm conviction that a mistake has been committed."[30]

The district court based its determination that Cisneros was a supervisor in the drug trafficking operation on the recommendations of the presentence investigation report ("PSR"), which concluded that Cisneros had supervised the actions of Gutierrez, Llamas, Guevara, Gomez, and two unidentified and unindicted co-conspirators. During the loading of the trailer, Cisneros opened and closed the doors of the trailer, thereby controlling the movements of the co-conspirators. Also, he did not personally participate in the loading of the pallets or the concealing of the marijuana. The trailer was registered in the name of his brother, Fernando, and the telephone found in the green car indicated that he was in communication with the other co-conspirators.

These facts, however, are not sufficient to show that Cisneros was more than a mere co-conspirator and had some sort of supervisory function. Although he was the "doorkeeper" to the trailer, that role does not necessarily prove that he had some sort of supervisory control. It is more likely that Cisneros's injuries rendered him unfit to load the drugs into the trailer, as a consequence of which

---

[28] *Cisneros-Gutierrez*, 517 F.3d at 764 (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008)).

[29] *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007).

[30] *Id.* (quoting *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir. 2002)).

he helped in the only manner that he could. The registration of the trailer to Cisneros's brother does not indicate that Cisneros somehow directed his brother or anyone else. As the contents of the telephone calls are unknown, the mere fact that Cisneros called the other co-conspirators does not indicate that he was their supervisor. There is no evidence in the record that Cisneros took on a supervisory role, *e.g.* finding the driver, obtaining use of the ranch, spearheading the drug deal, or having some sort of authority over the other participants. As we conclude that the district court clearly erred in this determination, we must vacate the sentence imposed and remand for resentencing.

### III.  Conclusion

We affirm Cisneros's conviction on both counts. The evidence was sufficient for a reasonable trier of fact to find him guilty of conspiring to distribute and of possessing a large quantity of marijuana, in large part because (1) an officer managed to identify Cisneros as present during the loading of the trailer, and (2) he attempted to evade the police after the trailer had been stopped. The district court did not abuse its discretion in admitting evidence of his prior conviction because it was a similar crime, and the district court gave a limiting instruction to the jury. And, although the district court erred when it gave a deliberate-ignorance jury instruction, that error was harmless, given the substantial evidence of Cisneros's actual knowledge of the nature of the activities on the night and morning in question.

Cisneros's sentence, however, is problematic because the evidence does not support the determination that he acted in a supervisory role during the conspiracy. Consequently we AFFIRM Cisneros's conviction, VACATE his sentence, and REMAND to the district court for resentencing.